SOUHEGAN NATIONAL BANK *vs.* ALBERT J. BOARDMAN.

June 8, 1891.

Note of Corporation Payable to and Indorsed by its Treasurer—Liability of Indorser—Evidence.—Action against the defendant as indorser upon the following promissory note:

"$1,000. Minneapolis, May 12th, 1884.

"Six months after date we promise to pay to the order of A. J. Boardman, Treasurer, one thousand dollars. * * *

"MINNEAPOLIS ENG. & MACHINE WORKS.
"By A. L. CROCKER, Sec'y."

[Indorsed:] "A. J. BOARDMAN, Treasurer."

*Held,* that the indorsement is *prima facie* the individual contract of the defendant, but that extrinsic evidence is admissible to show that he made it only in his official capacity as treasurer of the maker corporation, and as its indorsement.

Same — Extension Given to Maker — Discharge of Indorser — Evidence.—*Held, also,* that upon the evidence it was a question for the jury whether the extension of the time of payment had been given by the holder to the maker without the consent of the indorser.

Appeal by defendant from an order of the district court for Hennepin county, *Smith,* J., presiding, refusing a new trial after verdict of $1,410 for plaintiff.

*Hart & Brewer,* for appellant.

*D. A. Secombe,* for respondent.

MITCHELL, J.   This action was brought against the defendant as indorser upon the following promissory note.

"Minneapolis, May 12th, 1884.

"$1,000.

"Six months after date we promise to pay to the order of A. J. Boardman, Treasurer, one thousand dollars, value received, with interest at eight per cent. after maturity.

"MINNEAPOLIS ENGINE & MACHINE WORKS.

"By A. L. CROCKER, Sec'y."

[Indorsed:]   "A. J. BOARDMAN, Treasurer."

It was admitted by the pleadings that the Minneapolis Engine & Machine Works was a corporation, and that defendant was its treasurer.   The defendant set up two defences:   (1) That the indorsement was an official act only as treasurer, and was the contract of the corporation, and not of the defendant individually, the note being made by the corporation, payable to and indorsed by itself; (2) that at the maturity of the note the plaintiff, for a valuable consideration, made an agreement with the maker, extending the time of payment three months, without the procurement or consent of the defendant.   The reply admitted that "this was done, but alleged that it was done by Boardman himself."   We construe this as an admission that the extension was made by agreement between the plaintiff and the maker, but that defendant himself was the person who made this agreement in behalf of the corporation; consequently that it was with his consent.

Of course it is elementary that time given to the principal debtor at the instance or with the consent of the surety or indorser does not release the latter.   To discharge him there must be a binding agreement for an extension, founded on a sufficient consideration, and without his consent.   Upon the trial both parties seem, for some reason, to have fought rather shy of this question.   The only evidence tending to prove that the extension was made without defendant's consent was elicited by the plaintiff on cross-examination of defendant,

and, while his testimony was given in very general terms, yet we think it was enough to make a question for the jury, especially in view of the admitted fact that the agreement for an extension was made between the plaintiff and the maker of the note. The defendant requested the court to instruct the jury that if the time of payment was extended without the consent of the defendant, such fact would release him from all liability. The court refused to give this instruction, or to submit this question to them at all, presumably upon the idea that there was no sufficient evidence to support a verdict for defendant on this issue. In this we think the court erred, and for that reason a new trial must be granted.

2. With a view to another trial it is necessary to consider the questions involved in the first defence. These are (1) whether, on the face of the paper, this is the indorsement of the corporation or of defendant individually; and (2) whether its character is conclusively determined by the terms of the instrument itself, or whether extrinsic evidence is admissible to show in what character—officially or individually—the defendant made the indorsement. Where both the names of a corporation and of an officer or agent of it appear upon a bill or note, it is often a perplexing question to determine whether it is in legal effect the contract of the corporation or the individual contract of the officer or agent. It is very desirable that the rules of interpretation of commercial paper should be definite and certain; and if the courts of the highest authority on the subject had laid down any exact and definite rules of construction for such cases, we would, for the sake of uniformity, be glad to adopt them. But, unfortunately, not only do different courts differ with each other, but we are not aware of any court whose decisions furnish any definite rule or system of rules applicable to such cases. Each case seems to have been decided with reference to its own facts. If what the courts sometimes call "corporate marks" greatly predominate on the face of the paper, they hold it to be the contract of the corporation, and that extrinsic evidence is inadmissible to show that it was the individual contract of the officer or agent. If these marks are less strong, they hold it *prima facie* the individual contract of the officer or agent, but that extrinsic evidence is admissible to show that he executed it in

his official capacity in behalf of the corporation; while in still other cases they hold that it is the personal contract of the party who signed it; that the terms "agent," "secretary," and the like, are merely descriptive of the person, and that extrinsic evidence is not admissible to show the contrary. See Daniel, Neg. Inst. § 398 *et seq.* When others have thus failed we can hardly hope to succeed. Perhaps the difficulty is inherent in the nature of the subject.

This court has in a line of decisions held that where a party signs a contract, affixing to his signature the term "agent," "trustee," or the like, it is *prima facie* his individual contract, the term affixed being presumptively merely descriptive of his person, but that extrinsic evidence is admissible to show that the words were understood as determining the character in which he contracted. See *Pratt* v. *Beaupre,* 13 Minn. 177, (187;) *Bingham* v. *Stewart,* 13 Minn. 96, (106,) and 14 Minn. 153, (214;) *Deering* v. *Thom,* 29 Minn. 120, (12 N. W. Rep. 350;) *Rowell* v. *Oleson,* 32 Minn. 288, (20 N. W. Rep. 227;) *Peterson* v. *Homan,* 44 Minn. 166, (46 N. W. Rep. 303;) *Brunswick-Balke Co.* v. *Boutell,* 45 Minn. 21, (47 N. W. Rep. 261.) Only one of these, however, (*Bingham* v. *Stewart,*) was a case of commercial paper where the name of a corporation appeared on its face, and in that case possibly the court did not give due weight to all the "corporate marks" upon it. Where there is nothing on the face of the instrument to indicate in what capacity a party executed it except his signature, with the word "agent," "treasurer," or the like suffixed, there can be no doubt of the correctness of the proposition that it is at least *prima facie* his individual contract, and the suffix merely a description of his person. But bills, notes, acceptances, and indorsements are to some extent peculiar,—at least the different relations of the parties, respectively, to the paper are circumstances which in themselves throw light upon, and in some cases control, its interpretation, regardless of the particular form of the signature. For example, if a draft were drawn on a corporation by name, and accepted by its duly-authorized agent or officer in his individual name, adding his official designation, the acceptance would be deemed that of the corporation, for only the drawee can accept a bill; while, on the other hand, if drawn on the drawee as an individual, he could not by words

of official description in his acceptance make it the acceptance of some one else. So if a note was made payable to a corporation by its corporate name, and is indorsed by its authorized official, it would be deemed the indorsement of the corporation; for it is only the payee who can be first indorser and transfer the title to the paper. But this is not such a case. It does not appear on the face of this note what the defendant was treasurer of. Extrinsic evidence has to be resorted to, at the very threshold of the case, to prove that fact.

Counsel for defendant relies very largely upon the case of *Falk* v. *Moebs*, 127 U. S. 597, (8 Sup. Ct. Rep. 1319,) which comes nearer sustaining his contention than any other case to which we have been referred. But that case differs from this in the very important particular that it appeared *upon the face of the paper itself* that the payee and indorser was the secretary and treasurer of the corporation, and that as such he himself executed the note in its behalf. The case was also decided largely upon the authority of *Hitchcock* v. *Buchanan*, 105 U. S. 416, which is also clearly distinguishable from the present case, for there the bill sued on purported on its face to be drawn at the office of the company, and directed the drawee to charge the amount to the account of the company, of which the signers described themselves as president and secretary.

Our conclusion is that there is nothing upon the face of the note sued on to take it out from under the rule laid down in the decisions of this court already referred to,—that upon its face this is *prima facie* the indorsement of defendant individually, but that extrinsic evidence is admissible to show that he made the indorsement only in his official capacity as the indorsement of the corporation.

Order reversed.