ROBERT BOYD, Appellee, v. JOSEPH BOYD, Administrator,
and C. M. DOWNS, Appellant.

**Mortgages:** IDEM SONANS: CONSTRUCTIVE NOTICE.  One who ac-
1   cepts a mortgage on real estate in the name of the owner
as disclosed by the record title, is not charged with construc-
tive notice of a judgment against the mortgagor under a dif-
ferent name, although the pronunciation of the name as it
appears in both places is the same.

**Priority of liens:** BURDEN OF PROOF.  To establish the priority of a
2   judgment lien over that of a mortgage under allegations of
actual notice, the judgment creditor has the burden of proving
the mortgagee's knowledge of his lien.

**Agency.** The fact that a mortgagee consents to rely on an ab-
3　stract of title prepared by the agent of the borrower, does
　　not make him the agent .of the mortgagee, so as to charge
　　the mortgagee with such agent's uncommunicated knowledge
　　of defects in the title.

*Appeal from Mahaska District Court.*— HON. W. G. CLEM-
ENTS, Judge.

FRIDAY, OCTOBER 27, 1905.

ACTION in equity to foreclose a mortgage on real estate.
The opinion states the facts. There was a decree for plain-
tiff, and the defendant Downs alone appeals.— *Affirmed.*

*Davis & Orvis,* for appellant.

*Liston McMillan,* for appellee.

BISHOP, J.— John Sheffey, or Cheffey, was an illit-
erate negro living in Mahaska county, with his wife, Ellen,
likewise illiterate. In February, 1900, the defendant C. M.
Downs obtained a money judgment against them under the
name of " Sheffey " in the district court of Mahaska county.
Subsequent to the rendition of said judgment the said negro,
under the name of John Cheffey, became possessed of the
title to the certain real estate in question, situate in said
Mahaska county, and which title was made a matter of
record. The mortgage here sought to be foreclosed was exe-
cuted by John Cheffey and Ellen Cheffey, his wife, and
bears date June 5, 1902. It was. made a matter of record
June 27, 1902. In August, 1902, Downs sued out an exe-
cution on his judgment, and the property in question was
levied upon by the sheriff as the property of John Sheffey or
Cheffey, and it was thus sold at execution sale; Downs be-
coming the purchaser. September 28, 1903, a sheriff's deed
was executed and delivered to Downs, and therein the judg-
ment debtor is described as " John Sheffey, or Cheffey," and

said deed was duly made a matter of record. John Sheffey, or Cheffey, having died, the defendant Joseph Boyd was appointed administrator of his estate on February 5, 1904. This action was commenced February 8, 1904, and C. M. Downs was made a party defendant, the allegation as against him being that he has an interest in the real estate, but which is inferior to the lien of the mortgage, and the prayer is that it may be so adjudged, and for foreclosure. There was judgment and decree by default against Joseph Boyd, administrator. Downs appeared and filed answer, among other things asserting that John Sheffey and John Cheffey was one and the same person, and setting up his judgment, execution sale, and deed, and his absolute title to the property thereunder. It is also alleged that plaintiff had actual and constructive notice of his (defendant's) judgment and that the same was a lien on the property at the time the mortgage now sued upon was taken and accepted. Said defendant prays that his title may be quieted accordingly.

A brief statement of the evidence will be sufficient. The old negro employed Liston McMillan, Esq., counsel for plaintiff in the instant action, to procure for him a loan on the property. McMillan applied to plaintiff, and the latter, although having no knowledge of Cheffey, consented, provided his mortgage should be a first lien on the property. McMillan assured him that he should have a first lien and agreed to prepare the abstract himself. Upon going to the records, he found the title in the name of John Cheffey, with no liens or judgments under that name. He then prepared the note and mortgage in suit, and had the same executed by Cheffey and wife, each signing by a cross, and they were delivered with the abstract to plaintiff, who, in turn, paid the amount of the loan to McMillan. The latter paid out the money as directed by Cheffey. It is certain that plaintiff had no personal knowledge of the Downs judgment. McMillan made no search of the records for judgments against "Sheffey"; but whether he knew otherwise of the

existence of the judgment in favor of Downs at the time he received the money from plaintiff for Cheffey is the subject of considerable dispute in the evidence.

I.   It is not contended by appellant that where a judgment debtor takes title to real estate in a name other than his own, and hence other than the name designated in the

1. MORTGAGES:
idem sonans:
constructive
notice.

judgment, and afterwards mortgages the property to an innocent third person, the judgment is the paramount lien.   It seems to be their thought that, as " Sheffey " and " Cheffey " are or may be pronounced alike, the instant case should be ruled by the doctrine of idem sonans.   But this cannot be.   Whatever might be said in a case presenting a fact situation different from that we have before us, it must be true here that the matter of pronunciation is of little, if any, consequence. The inquiry into the state of the records proceeded from a name recorded as the title holder.   The matter of spelling then became the important thing, because the records do not speak otherwise.   And it cannot be said in reason that the name " Cheffey " appearing as title holder would of itself constitute a warning signal to look out for judgments under the name of " Sheffey."   This being true, the situation is governed by the general rule, too well known to the profession to require the citation of authorities, to the effect that in matters of title one may rely upon the public records as written.   Of course, we do not mean to hold that, where the initial letters are the same, the doctrine of idem sonans may not be relied on to overcome a difference in spelling, where the pronunciation is substantially the same.   Conceding, then, that Boyd was bound by the records, and might not rely upon the abstract furnished him as a full and faithful disclosure of the matters appearing upon such records, still it must be said that as to him the record was clear, and that the filing of his mortgage gave to him paramount title.   As bearing on the subject, see *Howe v. Thayer,* 49 Iowa, 154; *Thomas v. Desney,* 57 Iowa, 58; *Huber v. Bossart,* 70 Iowa,

718; *Heil & Laner's Appeal,* 40 Pa. 453, (80 Am. Dec. 590.)

II. But counsel for appellant say that the burden was upon plaintiff to show that he did not have actual knowledge of the existence of the judgment and that the same consti-

**2. PRIORITY OF LIENS: burden of proof.** tuted a prior lien upon the property. There is no merit in this contention. To establish the supremacy of his judgment, Downs came in and asserted actual knowledge thereof on the part of plaintiff. Under a familiar rule, it was for him to prove it.

III. A further contention on behalf of appellant is that McMillan had knowledge respecting the judgment, and that, as in the matter of the preparation of the abstract he

**3. AGENCY.** was acting as the agent of Boyd, the latter became chargeable with the knowledge possessed by him. This position is wholly untenable. We need not stop to determine the fact as to what, if any, knowledge was possessed by McMillan. It is true, as shown by the testimony of McMillan, that Boyd consented to rely upon his representation as to the condition of the title. But that did not make him the agent of Boyd. McMillan was acting for Cheffey, and the effect of the situation was no more than if Boyd had said to Cheffey: I will take your word for it that the abstract you offer me shows perfect title. No authority is required to support this conclusion.

This disposes of the several contentions made by appellant, and, finding no error, the decree is *affirmed.*