# SUPREME COURT

OF THE

## STATE OF IOWA

AT

DES MOINES, SEPTEMBER TERM, 1918

---

KATE SCHULING, Appellant, v. I. S. ERVIN et al., Appellees.

**BILLS AND NOTES:** Signing in Representative Capacity. Promissory note signers who are acting solely in a representative capacity, and desire to escape all personal liability, must, *as to one whose knowledge is limited to what the face of the note reveals*, see to it that the principal is disclosed by the face of the note. *Held* that a signature, "Trustees of the Second Christian Church, I. S. Ervin, R. C.. Moulton, Chairman, M. L. Everett," personally bound the individual signers.

WEAVER, J., dissents.

**EVIDENCE:** Parol as Affecting Writing. Whether parol evidence is admissible to show that the signer of a promissory note intended solely to bind some principal who is *undisclosed* on the face of the instrument, *quaere*.

**PRINCIPAL AND AGENT:** Dual Agency. Statements by a borrower of money that he would sign the note only in a repre-

sentative capacity, made to his own agent *to procure the loan,* do not bind the payee in the note, even though such agent was payee's agent *to make the loan.*

PRINCIPAL AND SURETY: Estoppel by Proceeding Against Undisclosed Principal. Procuring an uncollectible judgment against an undisclosed principal in a note works no estoppel on the payee to proceed against the agents, who have, in legal effect, assumed the position of sureties on the note.

WEAVER, J., dissents.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

DECEMBER 14, 1918.

THE appellant claims to have loaned money to the appellees, as individuals. The counter contention is that these appellees signed as the agents of the Second Christian Church, and are not personally bound. The trial court adopted their view, and the plaintiff appeals.—*Reversed.*

*George Harnagel,* for appellant.

*Stewart & Hextell* and *S. F. Prouty,* for appellees.

SALINGER, J.—I. The signature to the promise to pay was in the following form:

"Trustees of the Second Christian Church.

   "I. S. Ervin,

   "R. C. Moulton, Chairman,

   "M. L. Everett."

Before considering what is the liability, where one signs, say, John Smith, Trustee, it may well be said to be doubtful whether the individual signatures make claim to a trustee relation to anyone. Nothing indicates such a claim on part of Ervin, unless it may be inferred from mere juxtaposition—from the fact that his signature appears immediately following "Trustees of the Second Christian Church." In the line following the Ervin signature, Moul-

ton designates himself as "Chairman." The signature of Ervin is as much in juxtaposition with that of Moulton as it is with the phrase "Trustees of the Second Christian Church." Add that Moulton designates himself as "Chairman," and the two facts make at least as much of an argument for holding that, though Moulton resorted to descriptive words, Ervin desired none, as the one fact of signing as close to the first line as to the Moulton line makes for claiming that Ervin designated himself as one of the trustees of said church.

Moulton uses the descriptive word "Chairman." So doing is as much support for arguing that he intended no description other than "Chairman," as for the argument that one who finds the signature "Trustees of the Second Christian Church" in the first line, I. S. Ervin, without more, in the second line, and then signs himself, and adds "Chairman," intended to assert that he was a trustee of said church.

Everett is the last signer, and uses no words of description. "Trustees of the Second Christian Church" is the first line; I. S. Ervin, without any descriptive words, the second line; R. C. Moulton, with the descriptive word "Chairman," the third line. Why does the fact that Everett signed last of all, without words of description, with these things preceding his signature, make any evidence that he asserted himself to be one of the trustees of said church?

II. But this may all be passed as not controlling. And it may be assumed, for the sake of argument, that the signatures are, in effect, what they would be if they were in the following form:

1. BILLS AND NOTES: signing in representative capacity.

"Trustees of the Second Christian Church, I. S. Ervin, R. C. Moulton, Chairman, M. L. Everett."

Will such signature avoid personal liability? It may be granted there is much judicial conflict on

the question; but it is everywhere agreed that, if the signature had been what has just been assumed, the signers will be personally bound, unless their signature is a sufficient indication of what principal the signers were acting for. .Indeed, that is the effect of Section 3060-a20, Code Supplement, 1913.

It admits of grave doubt whether parol is admissible to show that the signers intended to bind some principal not disclosed on the face of the instrument. We may pretermit citation of the many cases that raise this doubt, because it is probably true that such evidence will be admitted, as between the original parties. See *Megowan v. Peterson*, 173 N. Y. 1. We think that the case states the law, if limited to such proof as stops short of varying by parol whatever is affirmatively expressed in the writing, and that it may not be carried to the point of, say, showing by parol that the disclosed principal was not the principal, and that someone else was. Many other illustrations could be indulged in, but it is unnecessary. But, of course, such testimony accomplishes nothing, unless it appear that the intent of the maker was in some manner made known to the payee, before he parts with his money in reliance upon the paper. We shall speak later to whether plaintiff had actual notice that the individual signers were acting for a disclosed principal. Assume, for the present, she had no notice except what the face of the note imparted, and keeping in mind that, if the signatures had been qualified by nothing but words such as "agent," or "trustee," the signers would be personally liable (see *Stevenson v. Polk*, 71 Iowa 278, at 285, where the signature was, "J. S. Polk, Trustee," and which case approves many that precede it, and in its turn has never been seriously challenged), and we have the question whether the signature at bar disclosed more than the equivalent of sighing, and adding descriptive words, such

2. EVIDENCE: parol as affecting writing.

as "Chairman" or "Trustee" or "Agent." We have else-where assumed, for the sake of argument, that the signature is equivalent to "One of the Trustees of the Second Christian Church, I. S. Ervin, R. C. Moulton, Chairman, M. L. Everett." Such qualifying words have more effect, perhaps, than the mere signing of one's name, and adding some such word as "Trustee." Be that as it may, if any principal is disclosed by such signature, is it "The Second Christian Church?" Does that, of itself, disclose who the principal is? Would not further inquiry be necessary, before it would be known what principal is disclosed? Could plaintiff have maintained suit on this note by merely making "The Second Christian Church" the defendant? If she had so impleaded, upon whom would she have served original notice, without aid beyond the statement that the signer was "The Second Christian Church?"

2-a

As said, it is universally agreed that these signers were bound, unless a principal was disclosed. Let us test whether there was sufficient disclosure, by the case law.

In *Schumacher v. Doland,* 154 Iowa 207, Renihan, who followed his signature by "Pastor of St. Francis Church," was held to have given a personal obligation. Why is "Pastor of St. Francis Church" less a disclosure of a principal than "Trustees of the Second Christian Church?"

In *Heffner v. Brownell,* 70 Iowa 591, the signatures were:

> "Independence Mfg. Co.
> "B. I. Brownell, President.
> "D. B. Sanford, Secy."

It was held this did not show Brownell signed as president of the Manufacturing Company, and was, therefore, personally bound. Why does not writing B. I. Brownell, President, in the line next to Independence Manufacturing Company, prove Brownell signed as president of the com-

pany, as much as signing I. S. Ervin, without the designation "President," next to the line "Trustees of the Second Christian Church?" If signing as Brownell did does not claim he signed as president, why does signing as Ervin did make a claim he signed as one of the trustees? And so of Everett. Neither Ervin nor Everett had either the aid of a descriptive word, like "president." If signing "B. I. Brownell, President," in the line next to "Independence Manufacturing Company" does not constitute a signing as president of that company, why does the signature "R. C. Moulton, Chairman," in the second line after "Trustees of the Second Christian Church" assert he signed as one of said trustees? The *Heffner* case, in holding the signers personally, held, among other things, that "Independence Mfg. Co." was not a sufficient disclosure of a principal. Why is signing "Independence Manufacturing Company," followed by "B. I. Brownell, President, D. B. Sanford, Secretary," not as much a disclosure of who the principal of Brownell and Sanford is, as is a signature which is not the signature of a church at all, and which, as against "Independence Manufacturing Company," is "Trustees of the Second Christian Church?"

III. Cases in our reports that may be urged for the proposition that here was a sufficient disclosure of a principal have, on analysis, no application, because their examination discloses that in them there *was* a sufficient disclosure. For instance, in *Baker v. Chambles,* 4 G. Greene 428, the promise was, "We, the undersigned, Directors of School District No. 4, Montpelier Township, promise to pay," and then signed their individual names. In the same situation is *Lyon v. Adamson,* 7 Iowa 509, 510. In *Harvey v. Irvine,* 11 Iowa 82, the note read, "We, or either of us, promise to pay * * * for value received of him in behalf of School District No. 6," and the signature was,

"James M. Irvine, President, L. B. Bullock, Secretary, Conrad Dietz, Treasurer."

In *Wheelock v. Winslow,* 15 Iowa 464, the signature was, "For the Dubuque Times Co., Ferd S. Winslow, Treasurer." In *Turner v. Potter,* 56 Iowa 251, it was, "Burlington & Southwestern Railway Co., V. K. Moore, A. Tr." Note, Moore does not sign as assistant treasurer of this railroad, or as the representative of anything. The first signature is that of the corporation itself, and the description of Moore is a statement of who affixed the signature of the corporation. In the case at bar, no signature of the church corporation appears. In *Exchange Bank v. Schultz,* 167 Iowa 136, the signature was, "Glendell Dairy Company, by Henry O. Harstad, President; J. E. Schultz." It is held that Schultz is personally bound, because the evidence does not justify reforming the note to show that he signed for the Dairy Company.

The signature in *Liebscher v. Kraus,* 74 Wis. 387, exhibits differences from the one at bar that have already been adverted to. It is, "San Pedro Mining & Milling Company, F. Kraus, President." Kraus was released; but it is again to be noted, the signature is that of the corporation. The case would be a parallel one, had the signature been, "President of the San Pedro Mining & Milling Company, C. F. Kraus," and Kraus been released.

All that *Capital Sav. B. & T. Co. v. Swan,* 100 Iowa 718, decides, is that, where the promise is signed, "Merchants Loan & Trust Company, Sioux City, Iowa, by W. E. Higman, President, F. C. Swan, Sec'y and Treas.," such signature suffices to put a purchaser of the note on inquiry as to whether the secretary intended to bind himself personally.

We are of opinion that the face of the note in suit did not disclose to the plaintiff who the claimed principal of the signers is, and that, upon the face of the instrument, the

signers Ervin, Moulton, and Everett were personally bound.

IV. The question remains whether the plaintiff was informed, other than by the face of the note, that Ervin, Moulton, and Everett were signing merely in a representative capacity. If she had such knowledge, it must be because Shope, who was the intermediary between the borrower and the lender, had such knowledge. Shope procured this loan for the borrower. Plaintiff testifies: "Mr. Shope loaned the money;" when the loan was made, she gave Shope her passbook, to go to the bank and draw the money, and he afterwards reported he had loaned the money, and gave her the note. Shope testifies that, at the time the note was given, he was "doing her business for her;" that he drew the note, procured its execution, and gave it to plaintiff; and that he "had been loaning money for her since about the year 1897 and 1898 down until this note was given," a period of ten years or more. But in spite of this, Shope also acted for the borrower. At best for appellees, Shope is what is known as a "double agent." And being that, his knowledge does not bind the plaintiff as to what was said in getting Shope to obtain the loan. See 2 Corpus Juris 446, 447, 448, 712; *Englemann v. Reuse,* 61 Mich. 395 (28 N. W. 149) ; *Henken v. Schwicker,* 174 N. Y. 298 (66 N. E. 971) ; *Boyd v. Boyd,* 128 Iowa 699.

3. PRINCIPAL AND AGENT: dual agency.

Note, too, that Shope merely advised the plaintiff that the "church people wanted $600," which is no more a disclosure of who the principal is than the note affords. Note, further, Shope added there would be four or five good men on the note, which justifies a fact finding that he thus led the plaintiff to believe that the individual names finally appearing on the note were a fulfillment of that promise.

V. As to alleged estoppel or ratification because plaintiff procured judgment against the church corporation, we are of opinion that, in the circumstances at bar, this does

not create a binding estoppel. Appellees **4. PRINCIPAL AND SURETY: estoppel by proceeding against undisclosed principal.** admit the church was the borrower. This, of itself, does not negative that the individuals are liable. A borrower may give sureties. If so, proceeding against the principal does not release the sureties, unless satisfaction be had. And see *Goodale v. Middaugh,* 8 Colo. App. 223 (46 Pac. 11), and *McClure v. Livermore,* 78 Me. 390 (6 Atl. 11).

In our opinion, the cause must be reversed. It is done, and the trial court directed to give plaintiff judgment on the note sued on, against the defendants Ervin, Moulton, and Everett.—*Reversed.*

· PRESTON, C. J., LADD, EVANS, GAYNOR, and STEVENS, JJ., concur.

WEAVER, J. (dissenting). I dissent. To make clear the reasons which impel me to withhold my concurrence, it is necessary to state the facts with some degree of fullness. The majority, in its opinion, touches upon these only in a fragmentary way, and reaches its conclusion very largely from a technical discussion of the mere form of the signatures appended to the note sued upon.

It is shown without serious dispute that, prior to the making of the note, certain persons holding to a common religious faith, and residing in Des Moines, organized and incorporated a society, not for pecuniary profit, under the name of "The Second Christian Church." This incorporated society entered upon the project of erecting a house of worship. When the building was nearing completion, it was found that the fund collected for that purpose was insufficient to cover all the expenses; and, as the contributing members were not able or not willing to increase their subscriptions, the matter of borrowing the needed money was proposed. The plaintiff was a resident of the city, and, for a period of ten years or more, had been lending money

through the agency or assistance of one Shope, who was a member of this church. The trustees of the church, acting in its behalf, mentioned to Shope the matter of borrowing the money, and he informed them that plaintiff had $600 which she might lend on a promissory note. To this, the trustees at once responded that they would not take upon themselves any additional personal liability in the enterprise. Shope then explained to them that he meant a "trustee note;" that, upon a note of that kind, the signers would not be charged with personal liability; and that plaintiff was willing to take the church for it. With this understanding, the loan was agreed upon, and plaintiff gave her bank book to Shope, to draw and deliver the money. The loan was then adjusted between Shope, acting for plaintiff, and the trustees; Shope drawing the note, and the trustees signing it in the manner and form stated in the majority opinion. Plaintiff took the note; and for several years, the church paid, and she received, the annual interest thereon. Later, default being made, plaintiff delivered the note to Shope for collection. Suit was brought thereon against the church alone; judgment was recovered for the amount of the debt; and the judgment was made a specific lien on the church property, subject to a prior mortgage. The property has since been sold, under special execution, and a small sum realized, which appears to remain in the hands of the sheriff, or the clerk. The present action was then begun at law against the trustees, alleging the note to be the individual or personal undertaking of the trustees, and asking a personal judgment against them. Answering the claim so made, the defendants allege that they signed and delivered the note in their representative capacity, as the act and obligation of the corporation, and not otherwise; and that it was so known and understood by all the parties thereto.

Defendants, further answering, say that they were unaccustomed to making such instruments in their capacity as trustees, and subscribed the note in the form in which it now appears, believing it was sufficient to indicate that the note was the note of the corporation alone; that such were the intention and belief of all the parties at that time, and, if such is not the legal effect of the note as written and signed, it is the result of mutual mistake: and they ask that the writing may be reformed, to express the true meaning and intent of the parties thereto.

That the defendants did not know or understand or believe that the note so made was anything more than the note of the corporation which they officially represented, is established with as much certainty as is humanly possible, in matters pertaining to mental operations. That Shope, plaintiff's agent in the transaction, so understood, and that he himself formulated the note, to give it the effect of a corporate obligation, and not the personal obligation of the trustees, is equally clear.

With the foregoing statement in mind, we are now prepared to consider the questions raised by the appeal. In doing so, it must be borne in mind that this case involves no charge of fraud or deceit on the part of defendants, or either of them. The questions presented by this appeal are:

I.   Does the form of the note, as executed, import upon its face a personal obligation of the trustees?

It may be conceded at the outset that there is probably no other controversy arising in ordinary business transactions concerning which there is such dire confusion and numberless inconsistencies in the adjudicated cases. The Supreme Court of the United States, referring to what it calls the "vast conflict," or "anarchy of the authorities," on this subject, says it is "not easy to lay down any general rule which would be in harmony with all of them." *Falk v. Moebs*, 127 U. S. 597. The result of this condition

has been that many, and perhaps a majority, of the courts, after a more or less vain attempt to discover some sound general principle threading its way through the countless aggregation of precedents, have abandoned the attempt, and exercised their right to follow the rule which commends itself to their several judgments as being nearest in accord with the general policy of the law in the interpretation and enforcement of contracts. There are very few courts which have not, at times, gone to the extreme of technicality in holding agents, officers, and trustees to personal liability upon contracts, where it was as clear as noonday that none was intended,—only to rebound to the opposite extreme of liberality, until there is not an American jurisdiction in which the decisions along this line are not, to a greater or less degree, inharmonious. Nor does this court, as we shall see, furnish any exception to the truth of that statement. Much of the confusion has arisen over the extreme tenderness of the law for the rights of holders of commercial paper, and the frequent failure of some courts to discriminate between the defenses which may be urged against such paper in the hands of subsequent purchasers and indorsees, and defenses which may be available where the action is between original parties.

Now, the case at bar is between the original parties. The note was given to plaintiff, and she is still its owner and holder; and I shall not, therefore, discuss the rule which has been applied where the suit is brought by a subsequent purchaser, except to give point to the proposition that what has been recognized as a good defense to a note in the hands of an assignee or indorsee is assuredly good as against the original holder.

Cases in plenty may be found in which it has been held that, if a note be so written as to import the signer's unqualified promise to pay, the mere fact that he adds the words "agent" or "trustee" or "president" or "secretary" to

his signature, without anything more in the instrument indicating the person, company, or corporation for which he assumes to act, the note will be construed and held to be his personal contract; and, as against a subsequent pui-chaser in due course, he will not be allowed to plead or prove that, in giving the note, he was, in fact, acting for another. So, too, precedents may be found for holding that, even as between the original parties, such defense will not avail; but such is certainly not the law in this state at this time, nor has it the support of the authorities generally. There is nothing sacred in a promissory note, to prevent the signer, as against the payee, from pleading the truth of the transaction in which or as part of which it was made. He may show that it was given and received as a mere accommodation note; that it was without consideration; that the consideration has failed; that the note was made and delivered upon a condition precedent, which has not been performed; or that, by mistake of the parties as to the legal effect of the language used, the maker is made to appear bound to personal liability for the payment of the note, when in truth such personal liability was not intended by either party. *Hausbrandt v. Hofler,* 117 Iowa 103; *Stafford v. Fetters,* 55 Iowa 484; *Lee & Jamieson v. Percival,* 85 Iowa 639; *Brook v. Latimer,* 44 Kan. 431 (24 Pac. 946, 947); *Johnson v. Ghost,* 11 Neb. 414 (8 N. W. 391); *Western W. Scraper Co. v. Stickleman,* 122 Iowa 396. Parol evidence is admissible to show that a note joint in form was intended to be joint and several. *Whitmore v. Nickerson,* 125 Mass. 496.

According to the weight of authority, as well as under the provisions of our Negotiable Instruments Act, if a plaintiff sue upon a note which the defendant has signed with the word "agent," or other word indicating a representative character, but without anything to indicate his principal or other person for whom he professes to act, the

signer is *prima facie* personally bound. The provision of
the statute (Code Supplement, 1913, Section 3060-a20), that,
where the note contains or the signer adds to his signature
words indicating that he signs for or on behalf of a princi-
pal, or in a representative capacity, he is not personally
liable thereon, if he acted with authority, establishes a rule
under which a vast number of extremely technical and con-
fusing precedents are no longer to be regarded as authority.
For example, there are many decisions of an earlier date
holding that, unless the disclosure of the principal is found
in the body of the note, the agent cannot avoid personal
liability by words of representation or description attached
to his signature; but the statute now provides that, if the
representative capacity of the signer be indicated either *in*
the note or *in the signature,* it is enough, and he is not
liable.   This, to a very large degree, relegates that over-
worked phrase, *"descriptio personae,"* to the ever-growing
scrap heap of useless legal learning into which the courts
and the profession occasionally delve for material with
which to ornament their rhetoric, or camouflage the defects
in a weak argument.   So, too, the further provision of the
statute, that the "mere addition" of words to the signature,
describing the signer as "agent," or as filling a represen-
tative capacity, "without disclosing his principal," will not
relieve him from personal liability, while providing an im-
perative rule in all cases of this class where nothing more
is shown than the addition of a word or words which do
not identify the principal, does not, in terms or by implica-
tion, exclude proof between the original parties, showing
that the principal was, in fact, known, and that the note was
made and accepted as the obligation of the latter.   This
question was before the New York court in *Megowan v.
Peterson,* 173 N. Y. 1, where suit was brought upon a
promissory note signed simply, "Charles G. Peterson, Trus-
tee," there being nothing in the note or signature indicat-

ing the beneficiary of the trust, if any there was. The defendant was, in fact, the trustee of an insolvent firm, under a composition settlement to wind up its business and apply its assets to the payment of its creditors; and, in the discharge of this duty, he gave the note in suit to the plaintiff, who took it, knowing and understanding that it was given solely in a representative capacity, and not as an evidence of a personal obligation. On the trial, the plaintiffs relied upon the provision of the Negotiable Instruments Act to which we have already referred, and the trial court ruled against the defendant, and excluded all extrinsic evidence. On appeal, the judgment was reversed. The court there says:

"It is contended, on behalf of the plaintiffs, that his [defendant's] representative character must be disclosed upon the face of the note. This may be so, in so far as innocent purchasers for value are concerned; but, as to the payees named in the note, we think a different rule prevails. * * * We do not understand that the statute * * * was designed to change the common-law rule in this regard, which is to the effect that, as between the original parties and those having notice of the facts relied upon as constituting a defense, the consideration and the conditions under which the note was delivered may be shown."

The same rule is approved in *Wanner v. Emanuel's Church*, 174 Pa. 466 (34 Atl. 188), where it is said that:

"The fact that a note is so executed by an agent as not to disclose his principal, and, therefore, to make it *prima facie* his individual note, * * * does not, rights of parties misled by such appearance being out of the way, preclude proof that it was intended to bind, and was in reality the note of, the principal; for parol evidence is admissible, in case of doubt, to show that the corporation, and not its agent, was to be bound."

To the same effect, see Field on Corporations, Section 198.

The Minnesota court has frequently held that:

"Where a party signs a contract, affixing to his signature the term 'agent,' 'trustee,' or the like, it is *prima facie* his individual contract, the term affixed being presumptively merely descriptive of his person; but that extrinsic evidence is admissible to show that the words were understood as determining the character in which he contracted." *Souhegan Nat. Bank v. Boardman,* 46 Minn. 293 (48 N. W. 1116); *Pratt v. Beaupre,* 13 Minn. 187 (Gil. 177); *Rowell v. Oleson,* 32 Minn. 290 (20 N. W. 227); *Peterson v. Homan,* 44 Minn. 166 (46 N. W. 303).

The same rule has been followed by practically every court in the United States, including this court,—though not always consistently. The following are illustrative examples: *Reeve v. First Nat. Bank,* 54 N. J. L. 208; *Haile v. Peirce,* 32 Md. 327; *Bean v. Pioneer Mining Co.,* 66 Cal. 451; *Mechanics' Bank v. Bank,* 5 Wheaton (U. S.) 336; *Second Nat. Bank v. Midland Steel Co.,* 155 Ind. 581 (58 N. E. 833); *Keidan v. Winegar,* 95 Mich. 430 (54 N. W. 901); *Benham v. Smith,* 53 Kan. 495 (36 Pac. 997); *Kline v. Bank,* 50 Kan. 91; *English & S. Am. M. & I. Co. v. Globe L. & T. Co.,* 70 Neb. 435 (97 N. W. 612); *Haskell v. Cornish,* 13 Cal. 45; *Janes v. Citizens Bank,* 9 Okla. 546; *Swarts v. Cohen,* 11 Ind. App. 20 (38 N. E. 536); *Bank v. Gay,* 63 Mo. 33; *Ohio & M. R. Co. v. Middleton,* 20 Ill. 629, 636. Citations to the same effect could be continued quite indefinitely. The sum and substance of the rule is well summed up in Mr. Abbott's Trial Evidence, page 46, as follows:

"If, upon the face of the instrument, there are indications suggestive of agency,—such as the addition of words of office or agency to the signature, or the imprint of the corporate title on the paper,—parol evidence is competent

to show who the parties intended should be bound or bene-fited."

This court has held it competent for the signer of a note, as against the payee, to show that the instrument, though in form a note, was intended as a mere receipt (*Hausbrandt v. Hofler*, 117 Iowa 103) ; that a written in-dorsement importing liability as an indorser may be shown to have been intended as an indorsement without recourse (*Stafford v. Fetters*, 55 Iowa 484). It has been at least five times held by us, in comparatively recent years, that, even if, upon the face of the note, it appears that corporate of-ficers signing it might otherwise be held liable, it was com-petent for them to show that they acted only in a repre-sentative capacity, without assuming personal liability, and that the writing would be reformed to give effect to the de-fense. *Lee & Jamieson v. Percival*, 85 Iowa 639; *Western W. Scraper Co. v. Stickleman*, 122 Iowa 396; *Capital Sav. Bank & T. Co. v. Swan*, 100 Iowa 718, 722. *Hanna v. Wright*, 116 Iowa 275, 277; *Lacy v. Dubuque Lbr. Co.*, 43 Iowa 510.

II.   But, to sustain the defense in this case, it is not necessary to go to the extent of liberality shown in most of the many precedents to which we have referred; for the note here sued upon comes clearly within the scope of the section above cited from the Negotiable Instruments Act, providing that the agent, trustee, or officer is exempted from personal liability, when the identity of his principal is re-vealed, either in the body of the note or in the form of his signature. No person of ordinary intelligence can read the signature of this note, and doubt for a moment that these men were acting in an official or representative capacity for the "Second Christian Church," and sought to express that fact. To say that, in thus executing the note, they made use of these terms simply as a matter of personal description or designation, is nothing better than solemn pretense, which

has acquired an air of legal solemnity by repetition, until it has lost its power to excite a smile over the joke which it conceals. The absurdity of applying such a rule in this case may be aptly illustrated by supposing that these defendants had applied to plaintiff or her agent for a loan of $600 for their own personal use and benefit, agreeing to evidence the debt by their joint and several promissory note, and they had tendered in fulfillment of their promise a note made in the very manner and form of the one which is here sued upon,—would the plaintiff have been under any obligation to accept it? It is inconceivable that any court would so hold. The tender would be promptly held insufficient, because: First, it is evident that the promise in such note is made by the signers in their representative capacity for the Second Christian Church; or, second, it is, at best, doubtful or ambiguous in this respect, leaving the intention of the parties to the instrument open to extrinsic proof. The provision of the statute (Section 3060-a20) is that, if the note "contains, or a person adds to his signature, words indicating that he signs for or on behalf of the principal, or in a representative capacity, he is not liable." No particular style or form of signature is prescribed; and any word or phrase which "indicates" to the mind of the average reader that the person writing his name on the paper is doing so in his representative, rather than in his personal, capacity, is all that is required. It is a matter of common knowledge and observation that, in these days, no man executing a note or other written contract in its own behalf attaches to his signature, as a matter of description or designation, any word showing his business or official relations with some third party or corporation having no interest in the transaction. It is barely possible that an occasional member of certain learned professions devoted to the healing of physical and spiritual ills may persist in the use of "Dr." or "Rev." in connection with his name on hotel regis-

ters or subscriptions to charitable funds, but no man, in the ordinary course of business, signs his personal and individual contract with words which will, or reasonably may, lead the reader to understand that he does so as the agent, officer, or representative of another. Upon this very subject, we have ourselves distinctly said:

"Such words are most commonly used with signatures to indicate an official act, and there is nothing in the note in suit which makes the words in question at all necessary, or even appropriate, to indicate mere personal liability. Words of a like character are so frequently used with a signature to designate an official act, and are so rarely used in that manner for any other purpose, that, when they are attached to a signature, they are well calculated to suggest that the signature was intended to be official, and not merely to describe the signer." *Capital Sav. Bk. & T. Co. v. Swan,* 100 Iowa 718, 723.

This rule is also approved by much the greater weight of authority. Says the Indiana court:

"In the usual course of business in this country, the addition of a title or description of any kind is not customary,—indeed, it may be said that such addition or description is *never* appended,—when men sign their names to contracts by which they intend to bind themselves in their own proper persons, and not as the representatives of another. Again, it is to be observed that such additions and descriptions, as 'president,' 'secretary,' 'treasurer,' 'trustee,' 'agent,' and the like, plainly import a relation to some other person, as a principal, distinct from the person signing the instrument. * * * It is not at all usual for a person executing a note, or other contract, to add words descriptive of himself, or to refer to his relation to other persons, whether natural or artificial, who have no connection with the transaction; and when he designates his representative capacity, to assume that such designation was intended merely

as a description of himself, is to assume something which is rarely—perhaps never—in harmony with the facts. * * * There is a growing inclination to consider an instrument as it would manifestly be understood by the average business man, or, in other words, as it was most probably understood by the party receiving and the party signing it, and to exonerate the latter from liability, when * * * it appears to the court that he did not intend, and was not understood, to bind himself, but to act for the corporation for which he was the agent." *Second Nat. Bank v. Midland Steel Co.,* 155 Ind. 581 (58 N. E. 833).

To the same point, see Mr. Freeman's note to *Greenberg v. Whitcomb Lbr. Co.,* 90 Wis. 225 (48 Am. St. 919). This court has made practical application of the same principle in *Baker v. Chambles,* 4 G. Greene 428, where we say that:

"If the name of the principal and the relation of agency be stated in the writing, and the agent is authorized * * * the principal alone is bound, unless the intention is clearly expressed to bind the agent personally."

This rule was followed in *Harkins v. Edwards,* 1 Iowa 426; *Lyon v. Adamson,* 7 Iowa 509; *Harvey v. Irvine,* 11 Iowa 82; *Wheelock v. Winslow,* 15 Iowa 464; *Lacy v. Dubuque Lbr. Co.,* 43 Iowa 510; *Western W. Scraper Co. v. Stickleman,* 122 Iowa 396. Of these cases, *Lacy v. Dubuque Lbr. Co.,* which is wholly ignored by the majority, is an instructive example. The note in that case made no express reference to the lumber company, except in the date line at the top, which reads:

"Office of the Dubuque Lumber Company, Dubuque, September 9, 1874."

This is followed by a promissory note, in ordinary form, "I promise to pay," etc., and signed "M. H. Moore P. D. L. Co." This we held to be the note of the company, saying:

"We think the note on its face shows that it is the obli-

gation of the defendant, * * * and few business men would
have difficulty in understanding the initials attached to the
name of the party signing it, and would interpret them as
meaning, 'President of the Dubuque Lumber Company.' But
if this be *not* so, and the letters are unintelligible without ex-
planation, the law will permit such explanation to be given.
1 Greenleaf on Evidence, Section 282; Story on Agency,
Section 154; Angell & Ames on Corporations, Section 294."

If, then, a name in the date line, and the letters "P. D.
L. Co.," be held sufficient to indicate the representative char-
acter of the signer, and the principal for whom he acts, it
seems little less than childish to say that a note subscribed
by the "Trustees of the Second Christian Church," fol-
lowed by their names, including the chairman of the board.
gives no indication of the representative character of such
signers, or of the corporation they represent; or to say
that the personal obligation of the signers is so clearly ex-
pressed that oral evidence in explanation thereof will not
be considered.    The Massachusetts court has said that the
courts will always "lay hold of any indication on the face
of the paper to enable them to carry out the intention of
the parties" (*Carpenter v. Farnsworth*, 106 Mass. 561, 562);
but the opinion of the majority herein indicates that this
court commits itself to the contrary policy, which regards
the intention of the parties as a matter of very slight mo-
ment.   As bearing out to its fullest extent the principle un-
derlying *Lacy v. Lumber Co.*, and other precedents men-
tioned in connection therewith, I further cite Field on Cor-
porations,   Section   198;   Mechem   on   Agency,   Sec-
tion 443; *Brockway v. Allen*, 17 Wend. (N. Y.) 40; 4
Thompson on Corporations, Section 5141 et seq.; *Sayre v.
Nichols*, 7 Cal. 535; *Hardy v. Pilcher*, 57 Miss. 18; *New
England Elec. Co. v. Shook*, 27 Colo. App. 30 (145 Pac.
1002); *Johnson v. Smith*, 21 Conn. 626, 627.   In the last
mentioned case, the note was signed by the "vestrymen"

of a named Episcopal Church, and this was held to be the note of the church, for which the signing vestrymen were not personally bound.

III.   Turning now to the cases cited by the majority, I freely admit that some of them—notably *Heffner v. Brownell,* 70 Iowa 591—go to the full extent of holding that an agent or corporate officer, even where the name of the corporation or principal is expressly indicated in the signature to the note, is conclusively to be held liable in a suit charging him as a maker of the instrument.   I also admit that, for a time, this court seemed to follow the precedent so established; but I further contend that, until the majority opinion in this case was adopted, we had, for a period of fourteen years, definitely receded from that position, and put ourselves in line with the current of modern authority, which holds either that a note in such form is to be held, as a matter of law, the obligation of the principal, and not of the agent (*Falk v. Moebs,* 127 U. S. 597 [32 L. Ed. 266]), or that the matter is open to explanation by extrinsic evidence (*Lacy v. Lumber Co.* supra), or, at the worst, that the instrument will be reformed to admit the defense (*Western W. Scraper Co. v. Stickleman,* 122 Iowa 396). The check in the reactionary tendency of *Heffner v. Brownell* and its following was first felt in *Matthews & Co. v. Dubuque Mattress Co.,* 87 Iowa 246.   There, although the majority of the court felt itself bound by the authority of the *Heffner* case, it eased its apparent repugnance to a rule so unreasonable by pointing out that, under the authority of *Lee & Jamieson v. Percival,* 85 Iowa 639, defendant had a way of escape therefrom, by asking a reformation of the writing.   Justices Kinne and Granger united in a very vigorous dissent, pointing out the inherent unsoundness of the rule, and showing, by a very convincing array of the authorities, that, as between the original parties, it is always admissible to show that the parties, in making and

delivering the note, intended it to be the obligation of the
principal, and not of the agent. The same division of the
court took place in the subsequent cases of *Day v. Rams-
dell,* 90 Iowa 731, and *Tama Water Co. v. Ramsdell,* 90 Iowa
747. Later, in *Hanna v. Wright,* 116 Iowa 275, 277, the
question arose again. The plaintiff was there seeking to
hold to personal liability the defendant, who had signed an
order for goods as "J. H. Wright, President School Board."
In support of the claim, plaintiff cited and relied upon the
cases of the *Heffner v. Brownell* class; and the court, speak-
ing by Deemer, J., refused to so rule, saying:

"Some of our cases sustain plaintiff's contention, but
the court as now constituted has grave doubts of the cor-
rectness of those decisions."

Two years later, it arose once more in *Western W.
Scraper Co. v. Stickleman,* 122 Iowa 396, where, in sub-
stance and form, the note sued upon is entirely similar to
the one now in controversy. It is a note in ordinary form,
in which it is said, "We promise to pay," and is signed:

| | | |
|---|---|---|
| "Polk Township | Trustees | Trustees: |
| "Taylor County | of said | J. M. Stickleman |
| "State of Iowa | Township. | Joseph Litsch." |

The defendant having pleaded the understanding of the
parties that no personal liability was assumed by them in
giving the note, and asking that the note be reformed ac-
cordingly the trial court found for the plaintiff. On ap-
peal, this court reversed the decree below, and, speaking
unanimously, by McClain, J., said:

"We think it doubtful whether these notes on the face
import individual liability of the defendants. It is true
that, in several cases [citing *Mathews v. Dubuque M. Co.,* and
others, by way of example], we have held that instruments
similar to those now before us conclusively import personal
liability of the signers, and that, in an action at law, the in-
tention that the instrument should bind the corporation

only, and not the officers, could not be inferred from the language of the instrument itself, nor shown by parol evidence. The court as now constituted would favor the conclusion reached by the dissenting judges in the *Mathews* case; but the question need not now be further considered. See, however, *Lacy v. Dubuque Lbr. Co.*, 43 Iowa 510. This much is said to avoid any inference which might otherwise be drawn that the instruments now before us would be conclusive as to defendant's liability in an action at law."

There the subject was allowed to rest, apparently finally settled for this jurisdiction, for a period of fourteen years, until the adoption of the majority opinion in this case. Meanwhile, the courts of at least three states,—Wisconsin, Indiana and Nebraska,—have definitely refused to recognize the authority of our *Heffner v. Brownell;* and with our own condemnation of it in *Hanna v. Wright* and *Scraper Co. v. Stickleman,* it ought to have been permitted to rest in its grave. Neither *Schumacher v. Dolan,* 154 Iowa 207, nor *Exchange Bank v. Schultz,* 167 Iowa 136, is in any manner inconsistent with the position I have taken.

IV. To recapitulate, the following propositions of fact are all shown, without substantial dispute:

1. The man Shope was, and for years had been, the plaintiff's agent, through whom she made loans of money; and he was not in any sense of the word an agent for the defendants.

2. The Second Christian Church, by its board of trustees, applied to said agent to obtain a loan, on the distinct understanding that such loan was being asked for upon the credit of the corporation.

3. With that notice, plaintiff, through her agent, furnished the money, and the agent prepared the note in the form in which it is sued upon, and assured the trustees that, in legal force and effect, it was a "church note," or

"trustee note," and did not import any personal liability on their part.

4.  The money borrowed was obtained for the use and benefit of the corporation alone, and was not in any manner or degree received or applied to the personal use, benefit, or advantage of the defendants.

5.  With this knowledge and notice, plaintiff took the note, collected the interest from the church corporation, and in the end, brought suit against said corporation and obtained judgment against it for the full amount of the note remaining unpaid, and a fraction of the amount so adjudicated in her favor has been collected.

Concerning the law applicable to the proved and admitted facts, I contend:

1.  That the note in the form in which it is made and signed brings it easily within the provisions of the Negotiable Instruments law, to which I have adverted, by which the person signing a note as agent or trustee is chargeable with no personal liability, if, in either the note or signature, there may be found "words indicating" that he signs for or on behalf of a principal, or "in a representative capacity."

2.  That, if any doubt arise in any mind upon this point, there can be none upon the further proposition that enough does appear to bring the case within the rule admitting extrinsic evidence of the intention of the parties, as has been held in at least a dozen of our own cases, above cited, and in a myriad other precedents from other states.

3.  That, in any event, if it be thought that the form of the note does not disclose the representative character of the defendants' signatures, a perfect case has been made for a reformation of the instrument.

4.  That the claim of the defense is clearly established, as a matter of law.

V.  There is another defense pleaded, which the majority pass with the merest touch, as not entitled to serious

consideration, but which I am constrained to believe presents an insuperable objection to a recovery by plaintiff. I refer to the plea setting up the fact that, before this action was begun, plaintiff, with knowledge that the note was executed for and in behalf of the church corporation, made use of it as such, brought suit thereon against the corporation, and prosecuted it to final judgment in her favor.

The universal rule is: (1) That, if A deals with B, knowing him to be acting as agent for C, a contract so made is, in law, a contract between A and C, and B is chargeable with no personal liability, if he acts within his authority as agent; and (2) that, if A is not aware of B's representative character, and deals with him in reliance upon his personal credit or responsibility, but later discovers that he acted, in fact, for C, then A may maintain action upon such contract against either B or C, but he cannot recover against both. From this, it follows of necessity, under the familiar rule as to election of remedies, that if, knowing the truth as to the representative character of the person with whom he has dealt, A sues C as the real principal, and prosecutes his suit to judgment, he waives or abandons his right of action against B. *McLean v. Ficke,* 94 Iowa 283, 292; *Keene Five Cents Sav. Bk. v. Archer,* 109 Iowa 419; *Codd Co. v. Parker,* 97 Md. 319 (55 Atl. 623); *Fowler v. Bowery Sav. Bank,* 113 N. Y. 450 (21 N. E. 172); *Lage v. Weinstein,* 35 Misc. Rep. 298 (71 N. Y. Supp. 744); *Pennsylvania Cas. Co. v. Washington P. C. Co.,* 63 Wash. 689 (116 Pac. 284); *McDonald v. New World L. Ins. Co.,* 76 Wash. 488 (136 Pac. 702); *Landers v. Foster,* 34 Wash. 674; *First T. & S. Bank v. Bloodworth,* (Okla.) 174 Pac. 545; *Booth v. Barron,* 29 App. Div. 66 (51 N. Y. Supp. 391); *Aimen v. Hardin,* 60 Ind. 119; *Anderson v. English,* 105 App. Div. 400 (94 N. Y. Supp. 200); *Rounsaville v. Insurance Co.,* 138 N. C. 191; 31 Cyc. 1578; *Remmel v. Townsend,* 83 Hun (N. Y.) 353; *Kingsley v. Davis,* 104 Mass.

178;  *Tuthill v. Wilson,* 90 N. Y. 423, 428.  In the last-cited case, referring to the rule of the authorities as to the right of the third party to recover against the principal, when known or discovered, or against the agent, it is said:

"He has the right of election as to which of them he will hold responsible; but, having once made an election, he is bound by it."

In perhaps a majority of the precedents, it is held that, if the creditor having such election brings an action upon his claim against either the principal or agent, the election is complete and irrevocable, and relieves the other from all liability.  In some jurisdictions, however, it is held that the mere bringing of an action is not a finality upon that question, and the right of election is not necessarily exhausted until the claim against one of them has been prosecuted to judgment.  Such seems to be the view of this court in some of its decisions.  But see *Courtney v. Courtney,* 149 Iowa 645, 647, 648; *Theusen v. Bryan,* 113 Iowa 496; *Steele Smith G. Co. v. Potthast,* 109 Iowa 413; *McLean v. Ficke,* 94 Iowa 283.

The only suggestion the majority makes in regard to this defense is to say that, if the defendants cannot be held personally liable because of their alleged failure to make their agency or representative character clear in the language of the note or in the manner and form of the signatures thereto, they can still be held as sureties of the church which the opinion concedes was the real borrower.  It is a sufficient answer to this proposition to say that, except in this language of the majority, there is not in the record, from beginning to end, an allegation or claim or assertion or word of proof that the defendants or either of them ever undertook to become surety on the note.  The evidence clearly disproves such an intent.  So far as appears in the record, no surety was asked for, and none offered.  The point made by the majority in this respect finds no justifi-

cation in the record, and is irrelevant. The alleged right of recovery against these defendants has been, from the start, and now is, not that defendants were not, in fact, the authorized representatives of the church corporation, or that they, as a matter of fact, intended to bind themselves personally, but that the note which they signed fails to clearly disclose the identity of the corporation as the real promisor, or to clearly indicate their own representative character. Because of this alleged failure, they say that the note must be read as the note of the defendants alone, and not the note of the church, and that extrinsic evidence is not admissible to show that they acted only as agents and officers of the corporation, or that the intent and purpose of all the parties thereto was to evidence by said note a corporate liability, and no more. The main inquiry to which the mind of the trial court and of this court has been directed by the plaintiff is simply whether the note, upon its face, is the note of the church corporation, or the personal note of the individual trustees who signed it. The contention of the defendants has been: First, that the note shows upon its face that it is the obligation of the corporation; or, second, that, in any event, enough appears upon the face of the note to raise doubt concerning the character in which the defendants signed it, thus opening the matter to parol proof of the facts; and that the proof offered, showing that they acted as agents only, is without dispute. If it is the note of the corporation, it is because it was executed by the defendants as its officers and trustees, and the corporation alone is liable. If it is so defective in form or in manner of its signing as to forbid its recognition as a corporate note without reformation, then, upon the undisputed evidence, it should be treated as reformed, in accordance with the intention of the parties. If so reformed, it is still the note of the corporation, and the defendants are not liable. Absolutely the only way in which it is possible,

under this record, to find for the plaintiff, is to resusci-
tate the discarded and discredited theory applied in *Heff-
ner v. Brownell*, supra, *et id omne genus*, and hold that,
even as between the original parties to the note, it is not
subject to explanation by proof of the circumstances un-
der which it was given, nor subject to reformation to make
it express the real intent of the parties. If that is what the
majority wish to declare the law of this state to be, I am, of
course, powerless to prevent it.

VI. . I confess to no little difficulty in obtaining a clear
understanding of what the majority opinion is really in-
tended to hold. It indulges in much comparison of the
mere form of the signatures of this note and those of many ·
other notes with which the courts have had to deal, and
then states its conclusion to be that "the face of the note
in suit did not disclose to the plaintiff who the claimed prin-
cipal of the signers is, and that, upon the face of the in-
strument, the signers Ervin, Moulton, and Everett were
personally bound." In reaching this conclusion, the *Heffner*
case is again given leading place in the discussion. It is
then said that plaintiff had no notice that defendants were
signing the note in a representative capacity. To do this,
it was, of course, necessary to avoid the legal presumption
of notice derived through her agent, Shope; and this is done
by saying that Shope was also agent for the defendants.
This statement is not justified by the record. Shope was,
and long had been, the admitted agent of the plaintiff for
the loaning of her money. If the church or its trustees,
knowing that fact, applied to him for such a loan, it did not
make him their agent. · Had they gone to any bank in the
city to procure a loan, the fact that they procured it
through the aid or by the hand of the bank's president or
cashier, would not make such officer their agent, in any
sense of the word. Not only is the presumption of notice to
the plaintiff conclusive, but every act on her part shows,

beyond any reasonable doubt, that she knew and fully understood, from the first, that the note given her was the note of the church, and not the personal obligation of the defendants. She collected the interest from the church; when default was made, she sued the church alone, and took judgment against it; and, so far as appears, never made demand upon these defendants or asserted any claim against them until long afterwards, when it may be presumed that her counsel conceived the idea that the framework of the note was such as to import the personal liability of the signers.

Finally, the majority, speaking of the admissibility of parol evidence to show the representative character of the signer of a note, and to point out the real principal intended to be bound thereby, say:

"It is possibly true that such evidence is admissible as between these parties, and that *Megowan v. Peterson*, 173 N. Y. 1, states the law, if limited to such proof as stops short of varying by parol what is affirmatively expressed in the writing."

Now, if the tendency and bearing of the opinion as a whole were in harmony with that expression, this dissent, so far as the law is concerned, would not have been written; for with that rule as a settled and admitted proposition, the final conclusion reached by the majority would have been impossible. If it be true (as I think it is) that the rule of the *Megowan* case is sound, and parol evidence is admissible, as between these original parties, why is it that the majority, over and over again, put to the front the case of *Heffner v. Brownell*, which confessedly turns upon the theory that parol evidence is wholly inadmissible? Why are this and other cases of that kind collated and pressed upon our minds as controlling authority, with never a word of mention of our decisions which discredit them, and hold that, as between the original parties, or as against any holder with notice, it is a good defense to plead and prove

that the note was signed in a representative capacity only, and was not intended by either party to import a personal obligation (for example, *Western W. Scraper Co. v. Stickleman,* 122 Iowa 396; *Hanna v. Wright,* 116 Iowa 275, 277; *Capital Sav. Bank v. Swan,* 100 Iowa 718, 722; *Lee & J. v. Percival,* 85 Iowa 639; *Stafford v. Fetters,* 55 Iowa 484; *Lacy v. Lumber Co.,* 43 Iowa 510; and others of which I have before made mention)? The mere incidental concession of the correct abstract principle goes for nothing, when, after stating it, the court proceeds with a labored argument based wholly upon precedents which deny that principle, to reach a conclusion which is inconsistent with it. It is admissible in aquatics for an oarsman to face in one direction while rowing in another; but, in the adjudication and protection of human rights by the court, it is a fashion more honored in the breach than in the observance.

Although this dissent has been protracted to a tedious length, I am not disposed to offer any apology for it. The importance of the principle involved is out of all proportion to the mere amount of money concerned in its decision. The maintenance of a reasonable degree of consistency in our opinions is highly desirable. It is even more desirable, when inconsistencies arise, and it becomes necessary for us to choose between opposing theories or rules of law, that we adhere to the one which appeals most strongly to our inherent sense of right, and is best calculated to promote equal and exact justice between man and man. There is no more just rule of law or of morals than this: That contracts and agreements fairly entered into shall be interpreted and enforced according to the actual meaning and intent of the parties. It is a rule which cannot be ignored or violated, without disregard to the basic principles of justice and of right, which underlie all law, and without which courts and court proceedings become engines of oppression. In my judgment, the majority opinion is clearly open to this objection. The judgment below ought to be affirmed.