CHARLES P. BOWDITCH & another, trustees, *vs.* NEW ENG-
LAND MUTUAL LIFE INSURANCE COMPANY.

Suffolk.   Jan. 12. — March 1, 1886.   DEVENS & GARDNER, JJ., absent.

Section 47 of the Pub. Sts. c. 119, providing that "no member of a committee or
   officer of a domestic insurance company, who is charged with the duty of invest-
   ing its funds, shall borrow the same," is directory only ; and if such an officer
   borrows money of such a company, and fraudulently pledges for the loan the
   negotiable bonds of an innocent third person, the company acquires title to
   the bonds, although the loan is in violation of the statute and of a rule of
   the directors, if it acts in good faith and without notice of the fraud.
A loan made by an insurance company to one of its finance committee may be
   made in good faith and in the usual course of business, although it is in viola-
   tion of the Pub. Sts. c. 119, § 47, and of a rule of the directors.

MORTON, C. J.   This is an action of tort in the nature of
trover, to recover the value of certain negotiable coupon bonds
held by the defendant as collateral security for several promis-
sory notes signed by Sidney W. Burgess.

Benjamin F. Burgess held the bonds in dispute as trustee un-
der the will of Lysander A. Ellis, deceased.   At several times he
applied to the defendant for loans of money upon the notes of his
son Sidney, offering these bonds as collateral security.   These
applications were submitted to the finance committee, a com-
mittee charged with the duty of investing the funds of the de-
fendant company, which passed votes authorizing the several
loans, and these votes were afterwards approved by the direc-
tors.   Thereupon Benjamin F. Burgess delivered the bonds to the
defendant, and received the amounts of the loans.

Benjamin F. Burgess was a member of the finance committee,
and was present at all the meetings, but neither spoke nor voted
upon the question of allowing said application.   The other mem-
bers of the committee knew that the loans, though in the name
of Sidney W. Burgess, were for the benefit of said Benjamin F.
Burgess, or of his firm, composed of himself and Walter Burgess,
another son.

At the time said loans were made and said bonds received,
Benjamin F. Burgess and his firm were in good financial standing,
and the members of the finance committee, except said Burgess,
made the loans and took the security without any knowledge

or suspicion that said securities were not the property of said Benjamin F. Burgess, or of said firm, and in the belief that said loans were abundantly secured, and were wise and prudent investments of the funds of the company. The presiding justice of the Superior Court, who heard the case without a jury, has found that, although the loans were in form loans upon the notes of Sidney W. Burgess, Benjamin F. Burgess was in fact the borrower of the funds of the corporation; and that said Benjamin F. Burgess took no part, on behalf of the corporation, in the transactions in which said loans were made.

For the purposes of this discussion, we treat the case as if the loans had been made in form and directly to Benjamin F. Burgess. We do not understand the plaintiffs to contend that the defendant is affected with the knowledge of Burgess of the fraud in the transfer of the bonds in dispute. Upon this point, the case of *Innerarity* v. *Merchants' National Bank*, 139 Mass. 332, is conclusive against them. But they contend that the contract between Burgess and the defendant was illegal and void; and that the defendant cannot retain the bonds which were given as security for the void contract.

This is the vital question in the case. The statute provides that "no member of a committee or officer of a domestic insurance company, who is charged with the duty of investing its funds, shall borrow the same, or be surety for such loans to others, or directly or indirectly be liable for money borrowed of the company." Pub. Sts. *c.* 119, § 47.

It is a rule universally accepted, that, if a statute prohibits a contract in the sense of making it unlawful for any one to enter into it, such a contract, if made, is wholly void, and cannot be enforced. But it is often a difficult question to determine whether a statute forbidding an act to be done, or enjoining the mode of doing it, is prohibitory, so as to make any contract in violation of it absolutely void, or whether it is directory in its purpose, and does not necessarily invalidate the contract. Though it may be impossible to formulate a rule which will reconcile all the adjudications, yet the decisions recognize a clear distinction between these two classes of cases. There is a large class of cases, both in this country and in England, in which statutes have enacted, in substance, that goods should only be

sold in certain measures, or in a certain manner, or after being inspected and branded by public officers; and it has been held that contracts of sale which do not meet the requirements of such statutes are absolutely void. The purpose of such statutes is to protect the buyer from the imposition of the seller, a purpose which would be wholly thwarted unless the contracts are held void, and therefore the intention of the Legislature to make them void is inferred. *Miller* v. *Post*, 1 Allen, 434, and cases cited. *Libby* v. *Downey*, 5 Allen, 299. *Sawyer* v. *Smith*, 109 Mass. 220, and cases cited. Benjamin on Sales, §§ 530 *& seq.*

So statutes prohibiting any work on the Lord's day, except work of necessity or charity, have been construed to make entirely void any contract made in violation of their provisions. On the other hand, there are numerous cases where statutes forbid certain acts to be done, and in a sense forbid certain contracts to be made, and yet it is held that contracts made in contravention of the statutes are not void. When usurious contracts were forbidden by our laws, under a penalty of forfeiting threefold the amount of interest reserved or taken, the act of making such a contract was illegal, but the contract was not void. The imposition of the defined penalty showed that the Legislature did not intend that the contract should be wholly void, as this would be imposing an added penalty. *Merrill* v. *McIntire*, 13 Gray, 157.

In *Larned* v. *Andrews*, 106 Mass. 435, it was held that the provisions of the internal revenue laws of the United States, prohibiting any persons from carrying on the business of wholesale dealers in merchandise until they should have paid the special tax therein provided for, did not invalidate sales made by persons who failed to comply with the statute, or prevent them from recovering the price of the goods sold. The same point was decided in *Aiken* v. *Blaisdell*, 41 Vt. 655.

The Revised Statutes of the United States respecting national banks provide that a bank shall not lend to any one person, corporation, or firm a sum exceeding one tenth part of the capital stock actually paid in, and that national banks shall not take real estate as collateral security except for debts previously contracted; and it has been repeatedly held that contracts made in contravention of the statute are not void. *Gold-Mining Co.*

v. *National Bank*, 96 U. S. 640.  *National Bank* v. *Matthews*, 98 U. S. 621.  *National Bank* v. *Whitney*, 103 U. S. 99.  *Reynolds* v. *Crawfordsville National Bank*, 112 U. S. 405.

Where the officers of a savings bank invest its funds in a manner forbidden by statute, such illegal action of the officers does not impair the validity of the investment.  *Holden* v. *Upton*, 134 Mass. 177.

Many other cases might be cited, in which it has been held that contracts made in violation of the provisions of statutes are not void, upon the ground that the statutes are intended merely to be directory to the officers or persons to whom they are addressed, and not to be conditions precedent to the validity of contracts made in reference to them.  Each statute must be judged by itself as a whole, regard being had not only to its language, but to the objects and purposes for which it was enacted.  If the statute does not declare a contract made in violation of it to be void, and if it is not necessary to hold the contract void in order to accomplish the purposes of the statute, the inference is that it was intended to be directory, and not prohibitory of the contract.

The statute we are considering does not in terms prohibit the corporation from lending money to its officers, or declare that such contracts shall be void.  It is directed to the officers, and, by its terms, seems intended to prescribe rules to regulate the duty of the officers to the corporation and its members.  It does not say that the corporation shall not lend, but that the officers shall not borrow.  In the words of Lord Mansfield, in *Browning* v. *Morris*, 2 Cowp. 790, 793, the statute itself "has marked the criminal."  It is designed to forbid officers, who are charged with the duty of investing the funds of the corporation, borrowing of themselves, and thus to prevent the risk of the funds being invested by them, under the promptings of self-interest, upon insufficient security.  In other words, the purpose is to protect the corporation and the policy-holders from the dishonesty or self-interest of the officers.  It is intended as a shield to the corporation.  To construe it as making the promises of the officers who borrow money in violation of its provisions void, would defeat the main purpose of its enactment, and would visit the consequences of the unlawful act of the officers, not upon

themselves, but upon the corporation for whose protection the statute was made. It would require a plain expression of legislative intention to lead us to such a construction.

. The plaintiffs contend that, unless the contract is held void, the statute is rendered nugatory. But this is not so. If the investing committee loans to an officer in violation of the duty imposed by the statute upon it, all who participate in the act would be liable for all losses occasioned thereby, and thus the main purpose of protecting the policy-holders would be subserved. The plaintiffs rely much upon the case of *Albert* v. *Savings Bank*, 2 Md. 159. But that case, if not overruled, is very much shaken as an authority by the more recent case of *Lester* v. *Howard Bank*, 33 Md. 558, which supports the views of the defendant.

For the reasons stated, we are of opinion that the notes signed by Sidney W. Burgess are valid contracts, which can be enforced by the corporation. This being so, we see no ground upon which it can be held that the defendant is not entitled to hold the bonds which it received in good faith as collateral security for the notes. The bonds were negotiable or transferable by delivery, and the defendant took them for a valuable consideration, and without fraud. The plaintiffs contend that they were not taken " in the usual course of business," because the contract of borrowing by Burgess was illegal. The rule is often stated to be, that, in order to hold such property against the true owner, the transferee must have taken it for a valuable consideration, in good faith, in the usual course of business, without notice of any want of title on the part of the party negotiating it. It is quite as often stated to be, that the transferee must have taken it *bona fide* and for value. Both have the same meaning, and the defendant is within either statement of the rule. It gave value for the bonds; it took them in good faith, in the ordinary and usual course of a transaction of loaning money and taking collateral security, and without any notice, actual or constructive, that Burgess was not the owner, with full power to transfer them. As to the defendant, the loan was legal; and the fact that Burgess was violating his duty in borrowing the money does not take the transaction of pledging the bonds as collateral security out of the usual course of business, or tend to

excite any suspicion in the defendant that the bonds were not his property.

We do not consider the fact of any consequence, that the loans to Burgess were made in violation of the rule of the directors.* This could not have more effect than a violation of the statute. Such a rule is a private regulation of the directors, and its violation or evasion could not affect the validity of the loans. *Judgment for the defendant.*†

*W. G. Russell & G. Putnam*, for the plaintiffs.
*W. C. Endicott & A. D. Foster*, for the defendant.

---

* At the time of the loan, the following rules of the directors were in force :

" Rule 7. A committee of finance, three in number, shall be annually chosen. They shall meet as often as may be necessary, and shall cause a record to be kept of everything they do, to be submitted for approbation to the directors at their next monthly meeting. They shall act on their own discretion in making investments. One of the committee shall sign with the president every transfer of shares in any bank or other company, and approve the discharge of each mortgage, and examine weekly the bank account. No loan from the funds shall ever be made to any of this committee."

" Rule 14. No alteration of any of these rules shall be made, unless notice of the proposal for alteration be given at a previous monthly meeting, and the same be adopted by a majority of the whole board of directors."

† Similar decisions were made on the same day in Suffolk, in the cases of

SARAH W. ELLIS *vs.* NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY ;

and

ELIZA S. GIBBS *vs.* SAME.

*W. G. Russell & G. Putnam*, for Ellis.
*R. Stone*, for Gibbs.
*W. C. Endicott & A. D. Foster*, for the defendant.

BY THE COURT. These cases are governed by *Bowditch* v. *New England Life Ins. Co. ante*, 292. *Judgments for the defendant.*