PAUL KRANIGER v. PEOPLE'S BUILDING SOCIETY.[1]

January 18, 1895.

No. 9122.

**Note of Corporation—Evidence.**

*Held*, that within the rule of Souhegan Nat. Bank v. Boardman, 46 Minn. 293, 48 N. W. 1116, extrinsic evidence was admissible to show that the parties who signed the note in suit executed it in their official capacity, as the contract of the defendant corporation.

**Course of Business—Evidence.**

Also, that the evidence as to the course of business permitted by the board of directors without objection justified the jury in finding that the secretary had authority to borrow money for the corporation, and execute notes therefor in its name.

**Person Dealing with Corporation Chargeable with Notice of its Charter Powers.**

A party dealing with a corporation is chargeable with notice of the nature and extent of its powers, as disclosed by its charter or articles of association.

[1] Reported in 61 N. W. 904.

Validity of Corporate Loan beyond Limit of Indebtedness—Recovery.

> Defendant's articles of association provided that the highest amount of indebtedness or liability which it should at any time incur was $1,000. Its secretary, with authority to borrow money in its behalf, borrowed from plaintiff $1,500, and executed therefor its note for that amount. The secretary embezzled the money, by appropriating it to its own use, and the corporation never received the benefit of it. *Held,* that the plaintiff could not recover the whole $1,500, because it was in excess of the corporate powers to incur an indebtedness to that amount, of which fact the plaintiff was chargeable with notice. But as there was no bad faith on the part of the plaintiff, and as the contract was not in violation of any positive law, and did not involve any moral turpitude or any consideration of public policy, the transaction was valid up to the limit, and void merely as to the excess, and the plaintiff might recover to the amount of $1,000, as for money loaned.

Appeal by defendant from an order of the district court for Ramsey county, Otis, J., denying its motion for a new trial. Reversed on condition.

*John D. O'Brien* and *John F. Fitzpatrick,* for appellant.

*Kueffner, Fauntleroy & Searles,* for respondent.

MITCHELL, J. The defendant was a private corporation for pecuniary profit, organized under the laws of this state in 1876. The articles of association provided that "the general purposes of said corporation and the general nature of its business shall be the building of houses, by raising funds to be loaned to its members for the purchase of real estate, satisfaction of mortgages, and other investments; also, the holding and sale of real estate taken on forfeitures or otherwise; and any other business naturally pertaining to its principal object, as aforesaid." The articles further provided that "the highest amount of indebtedness or liability which said corporation shall at any time incur is $1,000." The allegations of the complaint were that the defendant borrowed of plaintiff $1,500, and executed therefor to him its promissory note for that amount, payable in six months, with interest, no part of which had been paid; that the note was executed on behalf of the defendant by its president and secretary, who were duly authorized to borrow money for it, and execute therefor notes and other evidences of indebtedness in its name. The answer

consisted of special denials of the allegations of the complaint. The note in question, omitting the date, was as follows: "Six months after date, we promise to pay to the order of Paul Kraniger fifteen hundred dollars, for value received, with interest," etc. Signed: "John G. Donnelly, Pres. C. J. Thomson, Secty. People's Building Soc."

The first point made by the defendant is that this was the note of Donnelly and Thomson individually, and not of the defendant society. There is nothing in this point. This note is on its face one of the class where, under the doctrine of Souhegan Nat. Bank v. Boardman, 46 Minn. 293, 48 N. W. 1116, and other decisions of this court, extrinsic evidence is admissible to show that the officers executed the instrument in their official capacity as the note of the society. The evidence in this case was plenary that Thomson assumed to borrow the money and execute the note for and in behalf of the defendant, and that plaintiff understood that he was lending the money to it, and accepted the note as its contract; also that the note was in the form usually executed in behalf of the society when money was borrowed for its use.

Defendant's next contention is that Thomson, the secretary, had no authority to borrow money for the society, or to execute notes therefor in its name. So far as this involves merely the question of the extent of the authority of Thomson as an agent of the corporation (leaving out of consideration the limitation on the power of the corporation itself contained in the articles of association), the contention is equally unfounded. The evidence shows that Thomson, as secretary, had been permitted for years to manage the entire business of the corporation about as he pleased. In short, the society was practically a one-man corporation, and that man was the secretary. He was in the habit of borrowing money for the society, and executing notes therefor in its name, whenever he saw fit, and of paying them when they fell due by giving the drafts of the society on its treasurer, without any express authority from, or even consultation with, the board of directors. The president of the society was in the habit of executing its notes in blank, so that the secretary could fill them up and issue them whenever he pleased. This method of conducting business had been going on for a long time with the actual knowledge of at least a part of the directors,

and with constructive notice to all of them, but without objection, so far as appears, from any one. The records of the board of directors show that during all this time they never once took any formal action by way of either authorizing, ratifying, or disapproving a single loan made by the secretary in the name of the society. Here was a course of business which had been permitted to grow up with and by the knowledge which the board, charged with the duty of controlling and conducting the corporate business, had, or must be presumed to have had, of the acts of the secretary in and about the affairs of the corporation, which is equivalent to express and formal authority to the secretary to make such contracts in behalf of the society. At least, the evidence was such as to justify the jury in so finding.

The most serious question in the case, however, grows out of the fact that the loan and note given therefor were in excess of the amount of indebtedness authorized by the articles of association; in short, that the transaction was ultra vires the corporation itself, and not merely an authorized act of an agent. It appears that the society never received the benefit of any of the proceeds of this loan; that Thomson, upon receiving the money from plaintiff, instead of turning it over to the treasurer of the society, or applying it to corporate uses, embezzled it, by appropriating it to his own use, and then absconded. If the society had received the money and enjoyed the benefits of it, there is no doubt, under the authorities, but that the plaintiff could recover the money paid, if not upon the note, at least because of the money received and the benefit enjoyed by the defendant. Or, again, if the loan had been within the limit fixed by the articles of association, say for $1,000, and hence the transaction had been on its face within the powers of the corporation, as well as the authority of its agent, there would be no doubt, under the authorities, that the defendant would have been liable, notwithstanding that the agent, after receiving the money, misappropriated it, or that, because of extrinsic facts not known to the plaintiff, this loan increased the indebtedness of the society beyond the limit fixed in its articles of association. But in the present case the society has received none of the benefits of the loan, and the transaction was one which in and of itself assumed to create an indebtedness on the part of the society in excess of the limit fixed by its arti-

cles. The plaintiff was chargeable with notice of this latter fact, for it is a settled rule that a person who deals with a corporation must, at his peril, take notice of its charter or articles of association. It follows, therefore, that, so far as the authority of any agent of a corporation, or even of the board of directors itself, is defined by its charter or articles of association, the scope and extent of their powers must always be considered as disclosed. The act was in violation of the society's charter, and outside of the powers delegated to any of its agents, and therefore incapable of ratification by any corporate agents, even the board of directors itself. Nothing short of unanimous ratification by all the shareholders, with full knowledge of the act, would make such a transaction binding on the corporation as its contract.

None of the cases cited by plaintiff seem to us to be in point. They all fall within one or other of three classes: (1) Where the act was not in violation of the company's charter, but was merely claimed to be in excess of the powers delegated to some inferior agent; or (2) where the corporation had received and retained the benefits of the transaction; or (3) where the fact that the power of the corporation, in that regard, had been exhausted depended on the existence of certain extrinsic facts not known to the other contracting party. Dicta may be found in a few cases to the effect that limitations like this upon the amount of indebtedness which the corporation can contract are merely directory. But there can be no distinction in principle between a case where the charter or articles of association prohibit a thing altogether and where it is prohibited beyond a certain limit. In the one case there is a total absence of authority to do the thing at all, and in the other a total absence of authority to do it beyond a certain limit; and, after that limit is reached, there is as much an absence of authority in the latter case as there is in the former. No other rule would keep corporations in subordination to the state, or properly protect shareholders for whose special benefit these limitations, whether self-imposed or imposed by statute, are usually intended. And we think it will be found that, in every instance where any such dictum as that referred to has been uttered, the facts bring the case within one of the three classes which we have named. Of course, we are not speaking of the rights of parties dealing with the corporation in good faith, without

knowledge that the power has been exhausted, and who, as a rule, are not bound to investigate as to the extrinsic matters upon which that fact depends.

Counsel for plaintiff attempts to bring this case within the first or second class by some such process of reasoning as this: "The secretary was the agent of the society for the purpose of receiving money borrowed in its name. Therefore, the receipt of the money by the secretary was the receipt of it by the society itself." But this, it seems to us, is to beg the question, and to reason in a circle. The secretary was the agent of the society only to receive money authorized to be borrowed by the articles of association. Beyond this he had no authority, actual or apparent, to act for or bind the corporation. The proposition that the receipt by him of money which he was not authorized to receive, and of which it never received the benefit, is not a receipt of the society, so as to render it liable, either upon the contract or for money had and received, is illustrated and supported by the case of Western Nat. Bank v. Armstrong, 152 U. S. 346–352, 14 Sup. Ct. 572–574.

But, because the defendant is not liable to the extent of $1,500, it does not necessarily follow that it is not liable for any amount. The evidence shows that the board of directors had, by the course of business which they had permitted, impliedly assumed to give the secretary authority to borrow money and contract indebtedness in the name of the society in excess of $1,000. He had on several occasions, and presumably with their consent, borrowed money in amounts exceeding that sum. There is no evidence of any bad faith on the part of plaintiff in making this loan, or that he had any actual knowledge that the amount was in excess of the limit fixed by the articles of association. The contract was not one that was in violation of any positive law, or that involved any moral turpitude. It was neither malum in se nor malum prohibitum. The doctrine "in pari delicto" is inapplicable, for, in the proper sense of the word, there was no "delictum." The only objection to the contract is that the corporation had no power to incur an indebtedness exceeding $1,000, and therefore as to such excess the transaction was ultra vires. Where there is no element of illegality or moral turpitude in the transaction, and no consideration of public policy involved, and the departure from the articles of association goes mere-

ly to the limit of amount or quantity of an authorized act, then, it seems to us, the act is valid up to the limit and void merely as to the excess.  The case is not different from what it would have been had defendant's articles of association provided that the society should not borrow money at a greater rate of interest than 7 per cent., and the secretary had assumed to borrow at 10 per cent. We think it would be held that such a contract would be valid except as to the excess of interest.  See Farmers' & Traders' Bank v. Harrison, 57 Mo. 503.

Our conclusion is that the plaintiff may recover to the amount of $1,000 and interest, if not upon the note, at least as for money loaned; and the allegations of the complaint are sufficient to sustain a recovery on that ground.

We have not considered the plaintiff's contention that the evidence that the contract was ultra vires was inadmissible under the pleadings, for the reason that the point, even if otherwise well taken, is not available to the respondent.  The affidavit of Donnelly was admissible as impeaching evidence.

A new trial will be granted, unless the plaintiff shall, within 20 days after the filing of a remittitur in the district court, remit all of the verdict in excess of $1,000 and interest, in which case the district court is directed to enter judgment in favor of the plaintiff upon the verdict as thus reduced.