E. E. WEBSTER v. U. S. I. REALTY COMPANY AND OTHERS.[1]

March 4, 1927.

No. 25,555.

**Blue sky contract illegal.**

1. Contract issued by a corporation under the blue sky law, L. 1917, c. 429, as amended, *held* to be an investment contract and illegal.

**Purchaser may recover on it.**

2. The purchaser of an investment contract, issued and sold in violation of said chapter 429, is not in pari delicto with the seller and may recover the money paid thereon.

**And stockholder in insolvent corporation liable to purchaser.**

3. Stockholder in an insolvent corporation is liable to the purchaser for money paid on such illegal contract.

**Allowance of claims sustained.**

4. Evidence *held* sufficient to warrant an allowance of the claims made by the trial court.

[1]Reported in 212 N. W. 806.

**Liability of stockholders to creditors.**

    5. The liability of stockholders to creditors, though created by the Constitution, is based on contract.

Constitutional Law, 12 C. J. p. 737 n. 5.
Corporations, 14 C. J. p. 973 n. 9; p. 977 n. 58; p. 1129 n. 65.
Licenses, 37 C. J. p. 275 n. 16; p. 278 n. 59 New.

See note in 15 A. L. R. 262; 24 A. L. R. 523; 27 A. L. R. 1169; 30 A. L. R. 1331; 40 A. L. R. 1014.

A. I. Anderson, Knut Juveli, and James C. Morrison, on behalf of themselves and others similarly situated, appealed from orders and judgment of the district court for Hennepin county, Guilford, J., allowing claims of creditors against an insolvent corporation and assessing stockholders 100 per cent on the amount of stock owned by them. Affirmed.

*A. J. Rockne, George H. Sullivan, Frank L. Cliff,* and *Selover, Schultz & Mansfield,* for appellant stockholders.

*Chester W. Johnson,* for respondent receiver.

*Allen & Fletcher* and *A. X. Schall, Jr.,* for respondent creditors.

QUINN, J.

Appeal from an order of the district court allowing claims of creditors against an insolvent corporation and assessing the stockholders 100 per cent on the amount of stock owned by them.

The defendant corporation was organized under the laws of the state of Minnesota in 1915 with an authorized capital of $1,000,000, to be issued in shares of the par value of $100 each. The stock was sold and issued largely in amounts of from one to five shares, on the monthly instalment plan, to people of limited means residing in the country. At the time of the commencement of the bankruptcy proceedings in 1923, there were outstanding 6,338 shares of the capital stock, which had been sold and issued to approximately 800 different people residing in this and the four adjoining states.

The articles of incorporation provide that

"Article II.

"The general nature of the business of said corporation shall be buying, selling and improving lands and tenements; the loaning of money for itself and as agent for others, upon mortgages or other securities, and the purchasing and selling of lands, and of money obligations secured upon real or personal property; the buying, working, selling and dealing in mineral lands and other lands; the acquiring, holding, selling, hypothecating, assigning, transferring, and conveying of its own obligations, or the obligations of any persons or other corporation, and collecting, foreclosing, compounding, compromising, releasing, satisfying and discharging the same of record; the buying, owning and selling of stock in other corporations; the owning and improving of real estate by erecting buildings and other structures thereon and leasing and cultivating the same; the borrowing of money and executing mortgages or deeds of trust upon real estate or personal property as security therefor; the borrowing of money and the executing and issuing of promissory notes, bills of exchange, bonds, debentures or other negotiable or transferable instruments; the doing of any or all of said acts either on its own behalf or as agent for others; and the doing of any and all acts necessary for the carrying out of the powers above enumerated."

In the spring of 1923 the company issued what are referred to as three per cent contracts in which it agreed to sell land in Texas at a certain price per acre, payable in instalments. These contracts, as executed, were largely for the sale of one acre tracts and provided for certain options which the purchaser might avail himself of when his part of the contract was performed. Such a contract was considered by this court in the case of State v. Evans, 154 Minn. 95, 191 N. W. 425, 27 A. L. R. 1165, and in Vercellini v. U. S. I. Realty Co. 158 Minn. 72, 196 N. W. 672, where it was held to be an *investment contract*, under L. 1917, p. 635, c. 429, as amended by L. 1919, p. 99, c. 105. In the latter decision it was held that the contract was illegal and that the vendee was entitled to recover from the vendor the money paid thereunder. We adhere to that holding.

A mere reference to these contracts will disclose that all of the things attempted to be provided for therein were authorized under the sweeping power given by the articles of incorporation and that the issuing of such contracts was within the purpose of the articles and not ultra vires. The same conclusion applies to the so-called waiver and standard forms of contracts issued by the corporation. However, for the purpose of disposing of this appeal, we deem it unimportant whether such contracts were ultra vires or not. Kipp v. Miller, 47 Colo. 598, 108 Pac. 164, 135 Am. St. 236. The corporation sold the contracts and received payments thereon for the benefit of all its stockholders and as held in the Vercellini case is liable quasi-contractually to the purchaser for the amount so paid.

While it may be said that such money was received pursuant to an illegal contract, yet it was received without any consideration passing therefor. The law will not permit a corporation to assert a want of power to make a tortious or ultra vires contract for the purpose of defeating a liability which it had assumed to incur. The purchaser was not a party to the violation of the statute. He is not in pari delicto with the seller. The statute was intended to protect one class of people against the imposition of another class. The basis of this rule is that no one shall be allowed to enrich himself at the expense of another through his own wrongful act. Delaware F. M. F. Ins. Co. v. Wagner, 56 Minn. 240, 57 N. W. 656; Kraniger v. People's Building Soc. 60 Minn. 94, 61 N. W. 904; Erb v. Yoerg, 64 Minn. 463, 67 N. W. 355; Bell v. Mendenhall, 78 Minn. 57, 80 N. W. 843; Davis v. National Cas. Co. 115 Minn. 125, 131 N. W. 1013; Northland Produce Co. v. Stephens, 116 Minn. 23, 133 N. W. 93.

The amount of claims allowed by the trial court was in excess of $308,000, the larger portion of which was based upon the so-called investment contracts. A further claim of $294,531 is pending in the United States courts and it was agreed that whatever disposition was made of it in that court would be followed here. Following the decision in the Vercellini case, presentment of claims arising on the investment contracts for the recovery of the amount paid thereon began. These claims were held by upwards of 4,000 people, residing

in this and the four adjoining states, which will necessarily entail much time and expense in the adjustment thereof.

The corporation was organized under the Constitution and statutes of this state and of course is subject to the provisions thereof. Article 10, § 3, of the Constitution provides:

"Each stockholder in any corporation, excepting those organized for the purpose of carrying on any kind of manufacturing or mechanical business, shall be liable to the amount of stock held or owned by him."

It is contended on behalf of appellant stockholders that, the corporation never having been licensed to sell such investment contracts under L. 1917, p. 635, c. 429, as amended, they are illegal and void and therefore do not constitute the basis for legal claims against the corporation for which the stockholders are liable under the provisions of the Constitution. Technically this is true. The liability of the corporation is, not on the contract but on the obligation raised by law, to refund the money procured by means thereof. It is to make good the obligation of the corporation that the stockholders are being assessed. The trustee had disposed of the Texas lands. An assessment was necessary. Every person who became a stockholder in the corporation assumed liability, to the extent of the stock owned or held by him, for all obligations imposed upon the corporation. Hanson v. Davison, 73 Minn. 454, 76 N. W. 254; Way v. Barney, 116 Minn. 285, 135 N. W. 801, 38 L. R. A. (N. S.) 648, Ann. Cas. 1913A, 719; McKusick v. Seymour, Sabin & Co. 48 Minn. 158, 50 N. W. 1114; State ex rel. Hilton v. Mortgage Security Co. 154 Minn. 453, 192 N. W. 348. Under the provisions of the Constitution, a stockholder is liable to the amount of stock owned by him. The provision is unlimited as to the character of the transaction out of which the liability arose. Its language is broad and embraces involuntary obligations for negligent or tortious acts as well as those arising upon contract. It is too comprehensive to warrant a holding by the courts that it does not include such liabilities as here involved. Lininger v. Botsford, 32 Cal. App. 386, 163 Pac. 63.

The provision of the Constitution under consideration is self-executing. Way v. Barney, supra. In determining the liability of a stockholder, the statutory law must be read in connection with the articles of incorporation, thus arriving at the contract by which the stockholder agrees to be bound. Dupee v. Swigert, 127 Ill. 494, 21 N. E. 622; Golden v. Cervenka, 278 Ill. 409, 116 N. E. 273; East St. Louis v. Amy, 120 U. S. 600, 7 Sup. Ct. 739, 30 L. ed. 798. Applying this rule we arrive at the inevitable conclusion in the instant case that the stockholders are liable for the amounts paid upon the so-called investment contracts. The other claims are practically speaking for money loaned. The word "certificate" does not of itself change the character of the transaction into a banking act. The charter authorizes the loaning of money and the giving of notes and other obligations therefor. The corporation, having received the benefit of all such transactions, is sufficient to establish the liability of its stockholders under the provisions of the Constitution.

The contention that no competent evidence was had showing liability of the company is without merit. The claims had all been allowed in the bankruptcy court, and in addition to such allowance the claims were supported by the books of account of the corporation, which was the best available evidence under the circumstances. Nor do we find any trouble with the proofs of claims based upon the so-called mortgage loans or with reference to the miscellaneous claims. We find no reversible error in the allowance of claims nor in the holding as to the liability of the stockholders thereon.

Affirmed.