IN RE ESTATE OF PETER H. PETERSON.
HANS H. PETERSON AND OTHERS v. GEORGE M. HOVLAND.[1]

March 31, 1950.

No. 35,108.

[1]Reported in 42 N. W. (2d) 59.

*Moonan, Moonan & Friedel,* for appellants.
*Peterson & Peterson,* for respondent.

MATSON, JUSTICE.

Appeal from a district court judgment affirming an order of the probate court allowing decedent's last will and testament.

Peter H. Peterson, decedent, on September 7, 1948, which was several weeks prior to his death, executed his last will and testament, which, upon his request, had been drawn by the cashier of the Twin Lakes State Bank, a layman, who had never been admitted to the practice of law. The trial court specifically found that at the time the will was drawn "no emergency existed nor had the imminence of death left insufficient time to have this will drawn and its execution supervised by a licensed attorney at law."

Appellants are heirs at law for whom no provision was made in the will. The only issue raised is whether a will which is otherwise valid is invalid and should be given no legal effect by reason of the *sole* fact that it was drawn by a layman—who at the time the will was drawn was not admitted and licensed to practice as an attorney at law—in direct violation of M. S. A. 481.02, which provides:

Subd. 1. "It shall be unlawful for any person or association of persons, except members of the bar of Minnesota admitted and licensed to practice as attorneys at law, * * * *for or without a fee or any. consideration,* to prepare, directly or through another, for another person, * * * any will or testamentary disposition or instrument of trust serving purposes similar to those of a will, * * *."[2] (Italics supplied.)

Subd. 8. "Any person or corporation, or officer or employee thereof, violating any of the foregoing provisions *shall be guilty of a*

[2]Subd. 3 of said statute permits a layman to draw a will for another in an emergency wherein the imminence of death leaves insufficient time to have the same drawn and its execution supervised by a licensed attorney at law.

*misdemeanor;* and, upon conviction thereof, shall be punished as by statute provided for the punishment of misdemeanors. *It shall be the duty of the respective county attorneys in this state to prosecute violations of this section,* * * *.

"In lieu of criminal prosecution above provided for, such county attorney or the attorney general may, * * * proceed by injunction suit against any violator of any of the provisions above set forth to enjoin the doing of any act or acts violating any of said provisions." (Italics supplied.)

Does it follow that the will itself is tainted with such illegality as to be void by reason of having been drafted in a prohibited manner? Did the testator, in employing an unlicensed layman, so participate in the performance of a crime that his attempt to make a will resulted in a nullity? In considering the issue, it should be borne in mind that the direct violator of the statute, the unlicensed scrivener, is not a beneficiary under the will and is not a party to this litigation. He is in no manner seeking a fee for his services or any other benefit from his unlawful act. In other words, we are not asked to aid the wrongdoer himself. See, 5 Williston, Contracts (Rev. ed.) § 1630; Bosshard v. County of Steele, 173 Minn. 283, 217 N. W. 354; Goodrich v. N. W. Tel. Exch. Co. 161 Minn. 106, 201 N. W. 290. A different situation arises where an unlicensed practitioner seeks to recover fees for his performance of legal services. See, Annotations, 4 A. L. R. 1087 and 42 A. L. R. 1228; Giont v. Crown Motor Freight Co. 128 N. J. L. 407, 26 A. (2d) 282.

In most instances, decisions concerned with the validity of instruments executed in violation of a statute involve the issue of the enforceability or nonenforceability of contracts. Where an attempt is made to enforce a contract which was made in violation of a statute, many considerations enter which are not present where the validity of a will is assailed on the sole ground that it was drawn by an unlicensed scrivener. Nevertheless, the contract cases are illustrative of certain fundamental principles which are controlling. See, 5 Williston, Contracts (Rev. ed.) § 1630.

▉▉▉▉▉▉ Although the general rule is that a contract executed in violation of a statute which imposes a prohibition and a penalty for the doing of an act—such as the pursuit of an occupation, business, or profession without being possessed of a license as required by law for the protection of the public—is void, such rule is not to be applied in any particular case without first examining the statute as a whole to find out whether or not the legislature so intended.[3] It is not an arbitrary rule which is applicable to all instruments executed in violation of statutory prohibitions. Its applicable scope coincides with the reason for its existence, and when that reason ceases the rule itself ceases to have a basis and becomes inoperative. See, Webster v. U. S. I. Realty Co. 170 Minn. 360, 363, 212 N. W. 806, 807; cf. Restatement, Contracts, §§ 598-604. In construing such a statute, the inference is that the legislature did not intend that an instrument executed in violation of its terms should be void unless that be necessary to accomplish its purpose. Barriere v. Depatie, 219 Mass. 33, 106 N. E. 572. Usually the rule that a contract so made is void finds application where the acts or things prohibited by statute are *malum in se*, in that they are by their nature iniquitous and void. Laun v. Pacific Mut. L. Ins. Co. 131 Wis. 555, 111 N. W. 660, 9 L.R.A. (N.S.) 1204; Walter A. Wood Mowing, etc., Co. v. Caldwell, 54 Ind. 270, 23 Am. R. 641. No longer, however, is the distinction between acts which are *malum in se* and those which are merely *malum prohibitum* controlling in this jurisdiction in determining the validity of an instrument executed in violation of a statute. Holland v. Sheehan, 108 Minn. 362, 122 N. W. 1, 23 L.R.A. (N.S.) 510, 17 Ann. Cas. 687; 2 Dunnell, Dig. & Supp. § 1868. Where contracts or other instruments which are merely *malum prohibitum* have been made in violation of statutory provisions—

---

[3]Solomon v. Dreschler, 4 Minn. 197 (278); Miller v. Ammon, 145 U. S. 421, 12 S. Ct. 884, 36 L. ed. 759; Harris v. Runnels, 53 U. S. (12 How.) 79, 13 L. ed. 901; Pangborn v. Westlake, 36 Iowa 546; Barriere v. Depatie, 219 Mass. 33, 106 N. E. 572; see, 2 Dunnell, Dig. & Supp. § 1873; Annotations, 30 A. L. R. 834 and 42 A. L. R. 1226.

as in the instant case—they may or may not be void.[4] Generally speaking, a contract is not void as against public policy unless it is injurious to the interests of the public or contravenes some established interest of society. On the other hand, contracts are contrary to public policy if they clearly tend to injure public health or morals, the fundamental rights of the individual, or if they undermine confidence in the impartiality of the administration of justice. See, Solomon v. Dreschler, 4 Minn. 197 (278) ; 2 Dunnell, Dig. & Supp. § 1870. These general principles are of little direct aid in a specific case and are but reflections of what the legislature has usually declared public policy to be. Primarily, it is the prerogative of the legislature to declare what acts constitute a violation of public policy and the consequences of such violation. Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412. If an act is expressly forbidden and a penalty is imposed for a violation, the intent of the legislature is the controlling factor in determining to what extent, in order to preserve the requirements of public policy, contracts and other instruments made in connection with such act of violation are to be held illegal, if at all. 3 Sutherland, Statutory Construction (3 ed.) § 5608. An inference of invalidity does not necessarily follow from the fact that a statute prescribes a penalty. De Mers v. Daniels, 39 Minn. 158, 39 N. W. 98. Each statute must be judged by itself as a whole. Solomon v. Dreschler, 4 Minn. 197 (278) ; Bowditch v. New England Mut. L. Ins. Co. 141 Mass. 292, 4 N. E. 798, 55 Am. R. 474. In construing a statute where the language is not explicit and admits of construction, in determining legislative intent the courts will consider the occasion and the necessity for the law, the mischief to be remedied,

[4]De Mers v. Daniels, 39 Minn. 158, 39 N. W. 98; Pangborn v. Westlake, 36 Iowa 546; John E. Rosasco Creameries, Inc. v. Cohen, 276 N. Y. 274, 278, 11 N. E. (2d) 908, 909, 118 A. L. R. 641 (wherein a milk dealer was permitted to recover sale price of milk sold without having statutory license); Hartford F. Ins. Co. v. Knight, 146 Miss. 862, 867, 111 So. 748; Irwin v. Curie, 171 N. Y. 409, 64 N. E. 161, 58 L. R. A. 830; Niemeyer v. Wright, 75 Va. 239, 40 Am. R. 720; Warren People's Market Co. v. Corbett & Sons, 114 Ohio 126, 151 N. E. 51; 2 Dunnell, Dig. & Supp. § 1873.

the object to be attained, and the consequences of a particular interpretation. M. S. A. 645.16.

Section 481.02 had its origin with G. S. 1866, c. 88, § 8, which simply prohibited any person not a lawyer to appear, to maintain, or defend in any proceeding in court.[5] Although the wording was changed from time to time in certain inconsequential particulars, no major change was made until the enactment of L. 1901, c. 282, when it was made unlawful for an unlicensed practitioner not only to appear in court but also to hold himself out as competent to furnish legal services or to perform any legal services for a consideration. Undoubtedly this amendment by its application generally to the practice of law made it unlawful for a layman to prepare another's will for a fee. It was not, however, until the enactment of L. 1931, c. 114, § 1, that this statute was amended to apply in *express* terms to wills. Undoubtedly, the necessity for expressly prohibiting any person not licensed to practice as an attorney at law from preparing a will for another, *whether for or without a fee,* arose out of the deplorable situation frequently created for widows and children of testators whose wills had been drawn by laymen who meant well but had only a superficial knowledge of law. Through the bungling use of legal terms and an improper knowledge of estate planning, poorly drawn wills frequently were held invalid, specific bequests failed, estates were needlessly depleted by burdensome taxation, or the testator's intent was otherwise defeated. Incompetency was accompanied by irresponsibility, in that these laymen, unlike members of the bar, by reason of their unlicensed status were not subject to the direct supervision and discipline of the courts. See, Matter of Co-operative Law Co. 198 N. Y. 479, 92 N. E. 15, 32 L.R.A.(N.S.) 55, 139 A. S. R. 839, 19 Ann. Cas. 879; cf. State v. Nowicki, 256 Wis. 279, 40 N. W. (2d) 377. The need for remedial legislation was acute. It was met by the enactment of an

---

[5]Derivation of M. S. A. 481.02: Mason St. 1940 Supp. § 5687-1; L. 1931, c. 114, § 1; Mason St. 1927, § 5687; G. S. 1923, § 5687; G. S. 1913, § 4947; R. L. 1905, § 2280; L. 1901, c. 282; G. S. 1894, § 6179; L. 1891, c. 36, § 8; G. S. 1878, c. 88, § 8; G. S. 1866, c. 88, § 8.

express statutory prohibition and penalty, *not against any act of the testator or against the drafting or making of wills generally,* but solely against the act of the *unlicensed* will draftsman, whose unskilled services and irresponsible status could no longer be tolerated. As a result, we have a typical example of legislation designed to protect one class of the public, those persons in need of a will, from imposition by another class, those individuals who, without adequate legal training, offer their services to the unwary. Similar protective legislation is not new to this jurisdiction.[6] In De Mers v. Daniels, 39 Minn. 158, 39 N. W. 98, we held a contract for the sale of certain lots to be valid and enforceable though the vendor was subject to a statutory penalty for having failed to execute and file the townsite plat as required by G. S. 1878, c. 29. In the De Mers case we said (39 Minn. 159, 39 N. W. 99):

"It must be conceded to be an established principle of law that when a statute prescribes a penalty for the doing of a specific act, that is *prima facie* equivalent to an express prohibition; and that, *when the object of such an enactment is deemed to have been the protection of persons dealing with those in respect to whose acts the penalty is declared,* or the accomplishment of purposes entertained upon grounds of public policy, not pertaining to mere administrative measures, such as the raising of a revenue, the act thus impliedly prohibited will, in general, be treated as *unlawful and void as to the party who is subjected to the penalty.* This rule is not, however, without qualification. The question is one of interpretation of the legislative intention. *The imposing of a penalty does not necessarily give rise to an implication of an intention that, where an act is done which subjects a party to the penalty, the act itself shall be void, and of no legal effect;* and if it seems more probable, from the subject and the terms of the enactment, and from the consequences which were to be anticipated as likely to result from giving such an effect to the penal law, that it was not the intention

---

[6]De Mers v. Daniels, 39 Minn. 158, 39 N. W. 98; Webster v. U. S. I. Realty Co. 170 Minn. 360, 212 N. W. 806.

486

of the legislature to make the transaction void, but only to punish the offending party in the manner specified, the law should be so construed. * * * *The fact that no penalty, forfeiture, or disability is declared with respect to purchasers, under any circumstances, is worthy of being considered* in this connection." (Italics supplied.)

In the De Mers case, as in the instant case, a specific penalty was imposed for the wrongful act of one party, but the statute was silent as to the consequences to the other party and as to the validity of a written instrument executed in connection with or in reliance upon such wrongful act. In ascertaining legislative intent under such circumstances, we may well apply the maxim that "the expression of one thing is the exclusion of another." Sacketts Harbor Bank v. Codd, 18 N. Y. 240; Laun v. Pacific Mut. L. Ins. Co. 131 Wis. 555, 111 N. W. 660, 9 L.R.A. (N.S.) 1204; 6 Dunnell, Dig. & Supp. § 8980. As indicative of legislative intent to rely upon the penalty alone for accomplishing the statutory purpose, without holding the will itself void, is the statutory emphasis placed upon the enforcement of the penalty. By express terms, the statute declares it to be the positive duty of county attorneys to institute criminal proceedings against any unlicensed practitioners who draw wills—in the absence of an actual emergency when no lawyer is available. The only alternative in lieu of criminal prosecution is the initiation of proceedings to enjoin future acts of violation.

 Where a statute specifically prohibits and penalizes a certain act by the members of one class for the protection of the members of another class, a statutory construction should not be adopted which attributes to the legislature an intent to bring about a consequence that is inconsistent with the protective purpose for which the law was enacted. Where a penalty is imposed upon one party and not upon the other, they are not to be regarded as *in pari delicto*. Irwin v. Curie, 171 N. Y. 409, 414, 64 N. E. 161, 162, 58 L. R. A. 830. A testator is not *in pari delicto* with an unlicensed practitioner. He is a member of the class the statute was designed to protect. See, Webster v. U. S. I. Realty Co. 170 Minn. 360, 212 N. W. 806.

Protective legislation is to be construed so.that it does not become just another hazard for the unwary. If, by implication, we were to attribute to the legislature an intent that a will drawn by an unlicensed practitioner should in all cases be void, we would visit upon the.unfortunate victims of unskilled draftsmen a penalty far greater than, and out of all proportion to, the penalty imposed upon the wrongdoer himself. Where the legislature has carefully designated the *offense*, the *offender*, and the *penalty* and *has made specific provisions to insure enforcement*, the inference is that the legislature has dealt with the subject completely and did not intend, in addition thereto, that drastic consequences of invalidity should be visited upon the victim of the offender by mere implication. See, Laun v. Pacific Mut. L. Ins. Co. 131 Wis. 555, 570-571, 111 N. W. 660, 665, 9 L. R. A. (N. S.) 1204; Bowditch v. New England Mut. L. Ins. Co. 141 Mass. 292, 4 N. E. 798, 55 Am. R. 474.

Appellants cite Buckley v. Humason, 50 Minn. 195, 52 N. W. 385, 16 L. R. A. 423, 36 A. S. R. 637, in support of their contentions. In that case the plaintiff, who conducted a Chicago real estate brokerage business without having the license required by an ordinance of that city, was denied the right to recover his brokerage commissions, on the ground that where a business is made unlawful for unlicensed persons any contract made in such business is void. In the Buckley case, the wrongdoer himself was seeking, *to his own advantage,* to enforce a contract made in violation of law. In the instant matter we do not have that situation. It is also significant that the earlier De Mers decision (39 Minn. 158, 39 N. W. 98) was not called to the attention of or considered by the court. In a much later decision, Vercellini v. U. S. I. Realty Co. 158 Minn. 72, 196 N. W. 672, the court, after citing Buckley v. Humason, *supra,* expressly took notice of the error in the assumption that all contracts made in violation of law are necessarily void. In that case, the purchaser of certain lands under an investment contract made in violation of the blue sky law (L. 1917, c. 429, as amended by L. 1919, c. 105) was permitted to recover what he had paid. The court said therein that the purchaser was a member of the protected class and that

he was not *in pari delicto* with the seller, who was the only party guilty of violating the statute. See, also, Marin v. Olson, 181 Minn. 327, 232 N. W. 523.

■ Our attention is directed to In re Estate of Calich, 214 Minn. 292, 8 N. W. (2d) 337, wherein this court discussed the serious losses resulting to innocent people from the unlicensed practice of law by laymen, and then, after vigorously condemning such unlawful practice, urged the prompt and aggressive prosecution of all violators. This court therein expressed a reluctance to give effect to a will drawn by a layman in violation of the statute, but it is significant to note that the alleged will was drawn by a layman who stood to profit by his own wrongful act, in that he was the sole beneficiary. What is of more significance is that the actual decision therein was not based upon any illegality resulting from an unauthorized practice of law, but on a determination that the finding of the trial court that no will had ever been executed was sustained by the evidence. It is elementary that no decision has any authoritative value beyond the proportions established by its controlling facts.[7]

Appellants cite certain cases wherein unlicensed practitioners have appeared in court, and in consequence thereof the proceedings have been set aside and spoken of as void. These cases illustrate the confusion which results when the distinction between the words "void" and "voidable" is not observed. They also illustrate that the authoritative value of a decision is limited to the scope of its controlling or decisive facts. In practically all these

[7]Certain cases cited by appellants should be distinguished. In Waddell v. Traylor, 99 Colo. 576, 64 P. (2d) 1273, involving a suit upon a promissory note which, in violation of a penal statute, prescribed an unlawful rate of interest, the court held the note invalid *only* to the extent of the unlawful interest and allowed a recovery of the money actually loaned, together with lawful interest thereon. The court refused to increase the penalty beyond that expressly prescribed by the statute. In Hancock Co. Inc. v. Stephens, 177 Va. 349, 14 S. E. (2d) 332, the wrongdoer himself, an unlicensed real estate broker, was denied a right of recovery. Cf. Restatement, Contracts, §§ 598-604.

decisions, the courts have either granted a new trial or taken other steps to protect the rights of the wrongdoer's clients and the interest of opposing parties. No purpose will be served by attempting to distinguish or discuss such decisions, in that the task has already been ably performed in Schifrin v. Chenille Mfg. Co. Inc. 117 F. (2d) 92. In certain instances, court proceedings have failed for want of jurisdiction where the only effort made to invoke the court's jurisdiction has been by the issuance of a summons which was fatally defective in not having been subscribed by the plaintiff or by an officer of the court in his behalf, as required by statute. See, Jacobs v. Queen Ins. Co. 51 S. D. 249, 213 N. W. 14.

■ It follows that a will does not become invalid and void by reason of the sole fact that it was drawn for the testator—when no emergency existed which left insufficient time to have it drawn and its execution supervised by a licensed attorney at law—by a layman in direct violation of § 481.02, which prohibits and penalizes as a misdemeanor the act of an unlicensed practitioner in preparing a will for another.[8]

The judgment of the trial court is affirmed.

Affirmed.

Mr. Justice Frank T. Gallagher took no part in the consideration or decision of this case.

---

[8]There is a question whether appellants are in a position to raise the issue of illegality. Usually the issue or defense of illegality may be raised only by the parties or those claiming under them and not by third parties. See, Marx v. Lining, 231 Ala. 445, 165 So. 207; Ferris v. Snively, 172 Wash. 167, 19 P. (2d) 942, 90 A. L. R. 278; White v. Little, 131 Okl. 132, 268 P. 221; Matta v. Katsoulas, 192 Wis. 212, 212 N. W. 261, 50 A. L. R. 291.